No. 22812.

The Colorado River Water Conservation District *v.* Rocky Mountain Power Company, a corporation, William E. Goosman, Shirley M. Goosman, Highland Ditch Association, Winston Wheeler, Tom Theos, Katherine Theos, Nick Mahleres, Helen Mahleres, Energy Resources Technology Land, Inc., Hugh L. Caldwell, Robert C. Eller, J. W. Holzberlein, Alice B. Holzberlein, Evan H. Thomas, Maud E. Thomas, Harry Tucker, Robert T. Fulton, Estella M. Fulton, Harry Jordan, Minford Beard, Lewis F. Adams, Rachael Palmer, Clyde E. Muchmore, Gareth B. Muchmore, Allan W. Muchmore, The Colorado Game Fish and Parks Commission, Sterling Cook, Mary Cook, Stuart McLaughlin, Socony-Mobil Oil Company, Inc., Minnewa Bryson Bell, Joe Bush, Inc., George Z. Herrell, John Oldland, Howard H. Joy, John J. Joy, Mildred R. Watson, Elmer F. Polfer, White River Electric Association, Inc., Carl H. Seely, James Purdy.

(486 P.2d 438)

Decided April 19, 1971. Rehearing denied May 24, 1971.

310

Delaney & Balcomb, Kenneth Balcomb, Edward Mulhall, Jr., for plaintiff in error.

Charles F. Brannan, and Williams, Erickson & Wallace, Wayne D. Williams, for defendant in error Rocky Mountain Power Company.

Cooley & Benner, Frank G. Cooley, for certain defendants in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

PLAINTIFF in error, Colorado River Water Conservation District, brings this writ of error to review a decree of the trial court in a supplemental general water rights adjudication. This decree gives the Conservation District an appropriation date of October 31, 1961 for its "Flattops Project." Defendant in error, Rocky Mountain Power Company sought and obtained in the same adjudication an appropriation date of September 7, 1957 for its "Sweetwater Hydroelectric Project." Each party entered a protest to the claim of the other. Upon entry of findings of fact by the trial court, the Conservation District filed its "Objections and Exceptions to the Findings." The court overruled these objections and exceptions and entered its decree.

The appropriation date obtained by the Power Company is not contested in this writ of error. The Conservation District's sole argument is that it should have received an appropriation date of June 28, 1954 for it "Flattops Project." This date precedes both the September 7, 1957 date obtained by the Power Company and the October 31, 1961 date which the Conservation District did obtain. We affirm the trial court's determination of October 31, 1961 as the appropriation date for the Conservation District's "Flattops Project."

I.

The Power Company's motion to dismiss this writ of error was denied by this court on August 24, 1967 and the Power Company raises the motion again in its briefs before us. Basically, the contention is that the writ of error should be dismissed, since the Conservation District did not file a motion for new trial under C.R.C.P. 59. We reject this contention.

■■ Colo. Const. art VI, §21 confers upon the Supreme Court the power to make rules governing practice

in civil cases. The Rules of Civil Procedure apply to all civil cases specified in C.R.C.P. 1 except as "stated in Rule 81." C.R.C.P. 81(a) states that

"These rules do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the *applicable statute.*" (Emphasis added.)

In the instant case, the *applicable statute* [Colo. Sess. Laws 1943, ch. 190, §11 (repealed 1969)] provided that upon the court's initial findings as to the priority date, the volume, the source, and the point of diversion, the parties were entitled to present "objections and exceptions" to the court's findings prior to the entry of a decree by the court upon such findings.

The Conservation District on August 5, 1966 filed "objections and exceptions" to the court's findings and after a hearing on the matter, the court entered an order overruling these objections and exceptions. On November 21, 1966, the trial court entered its decree in accordance with its findings of fact.

■ We hold that water adjudication proceedings are "special statutory proceedings" as contemplated under C.R.C.P. 81. *Cf. Westminster v. District Court,* 167 Colo. 263, 447 P.2d 537; *Boxberger v. Highway Comm.,* 126 Colo. 526, 251 P.2d 920; *see also* Peterson, *Rule-Making,* 38 U. Colo. L. Rev. 137 (1966) and cases cited at n. 71 therein.

■ The purpose of the statutory provision allowing for the filing of "objections and exceptions" to the findings of the court prior to the entry of the decree was to allow the fact finder the opportunity to reconsider the entire case before entering a decree based upon such findings. This reconsideration might well entail questions of law as well as fact. For example, the priority date is termed a "finding" by the statute, but obviously, it must rest upon legal conclusions, such as, the "first step" doctrine involved herein. The new "Water Right Determination and Administration Act of 1969," 1969

Perm. Supp., C.R.S. 1963, 148-21-1 *et seq.*, provides that written protests stating "[*t*]*he factual and legal grounds* for the protest" shall be filed after entry of a referee's ruling. Thereupon, a hearing is provided for before the "water judge," followed by entry of judgment and decree. Appellate review may be had only as to that part of the decree which confirms a ruling with respect to which a protest was filed. 1969 Perm. Supp., C.R.S. 1963, 148-21-20. The intent is manifest in the 1969 Act that only the protest need be filed in order to obtain appellate review by right.

Although the intent is less manifest in the "old act," cited *supra,* under which this case must be decided, it is nonetheless apparent that its intent was to permit appellate review by right on the basis of the filed "objections and exceptions" overruled by the trial court. To require in addition, a ruling based upon a motion for a new trial, which motion in most cases would be a repetition of the objections and exceptions, would be an unnecessary burden on the time of the trial court and the parties. As provided in C.R.C.P. 1, these rules must be liberally construed to secure the just, speedy and inexpensive determination of every action.

The cases cited by the Power Company in support of its argument for dismissal of this writ of error are readily distinguished. For example, in *Noice v. Jorgensen,* 151 Colo. 459, 378 P.2d 834, the issue was whether a motion for amendment of the court's findings under C.R.C.P. 52 would suffice as a motion for new trial under C.R.C.P. 59. The motion was made *subsequent* to entry of judgment, as contemplated by C.R.C.P. 52. In the case at bar, the "objections and exceptions" must be filed before entry of the decree. In *People v. South Platte Dist.,* 130 Colo. 503, 343, P.2d 812, the statute precluded review by any method except a *quo warranto* proceeding commenced by the attorney general.

## II.

The Conservation District's claim to the 1954 date

is based upon its assertion that survey work commenced by the Bureau of Reclamation in 1954 may be used as the so-called "first step" of the Conservation District's perfection of its appropriation. *See Four Counties Water Users Ass'n v. Colorado River Water Conservation Dist.,* 161 Colo. 416, 425 P.2d 259, *cert. denied,* 389 U.S. 1049, 88 S.Ct. 765, 19 L.Ed.2d 840, *rehearing denied,* 390 U.S. 976, 88 S.Ct. 1020, 19 L.Ed.2d 1197. Some background information is helpful at this point.

In 1949, a study of the Colorado River basin upstream from the City of Grand Junction was begun by the Bureau of Reclamation to determine *potential* water resources development. This study culminated in the publication in 1954 of the Cliffs-Divide Project Report. One page of the 124-page report was concerned with the "White-Colorado Diversion." This diversion would involve storage of water from tributaries of the White River and diversion of the water into the Colorado River with attendant power generation and supply of water for industrial and municipal purposes, including support of potential oil shale development. This diversion concept is embodied both in the "Sweetwater Project" of the Power Company and in the "Flattops Project" of the Conservation District, and the existence of either project apparently would preclude the feasibility of the other project.

The Bureau of Reclamation's Cliffs-Divide Project was supervised by an employee of the Bureau of Reclamation, Phillip P. Smith. In 1953, a similar study of the Yampa and White Rivers was undertaken, again under the supervision of Smith. On June 28, 1954, the date claimed by the Conservation District for its appropriation, survey work on a *potential* Buck Creek Reservoir site (alternatively known as Rio Blanco Reservoir, a part of the Flattops Project) was begun by Smith and his survey party. This study was published in 1957 and is known as the "Yampa White Basin Report." In March 1956, Smith resigned his position with the Bureau of

Reclamation and commenced work as the Secretary-Engineer with the Conservation District, which allowed Smith to assist the Bureau in completion of the "Yampa White Basin Report," if his work load for the Conservation District permitted. It should be noted that the Cliffs-Divide and Yampa White Basin Reports, are described throughout the record as "reconnaissance reports," *i.e.*, reports studying *potential development* of the area. Subsequent "feasibility reports" for particular projects were not undertaken, nor were further funds for study appropriated.

On the basis of Smith's work with the Bureau of Reclamation and his subsequent employment with the Conservation District, the Conservation District, without any explanation but the threat of federal application of the doctrine of federal reservation of waters, asserts the 1954 appropriation claim. The doctrine of federal reservation of waters has no application in the determination of this case. The parties involved here are a water conservation district, formed and empowered under state statute, and a private corporation. The United States government asserts no claim in the adjudication and no privity is shown to exist between the Conservation District and the United States. In fact, in his testimony Mr. Black, the chief of the Bureau of Reclamation's engineering division in the Grand Junction Projects Office, a witness for the Conservation District, stated that to his knowledge the Bureau had made no assignment of any rights to the Conservation District.

Even if by some stretch of the legal imagination, the Conservation District could attribute the work done in 1954 to itself, we find that the case of *Four Counties Water Users Ass'n v. Colo. River Water Conservation Dist., supra,* is directly in point. In that case, a claim by the District based on the same "Yampa White Basin Report" was held by this court to be invalid because the work in making the Report was insufficient to constitute a "first step" toward perfecting an appropriation.

 Finally, even if the Bureau's work could be utilized by the Conservation District in perfecting an appropriation, and even if the Bureau's work was sufficient to constitute a valid "first step," still the requisite contemporaneous intent of the Conservation District to appropriate is from the record not shown to have existed until October of 1961, as per the minutes of a meeting of the Conservation District's Board of Directors. See the recent decision of this court in *Elk Rifle Water Co. v. Templeton,* 173 Colo. 438, 484 P.2d 1211. Therein, this court held that the combination of several weeks of intensive survey work in the field, followed immediately by a meeting of corporate officers who decided to proceed with a pipeline and reservoir project, came within the purview of the rule that intent to take must be accompanied by some open physical demonstration of the intent. This general rule which must be adhered to in determining the appropriation date, finds its origin in early Colorado water cases. *Sieber v. Frink,* 7 Colo. 148, 2 P. 901 and *Larimer County Reservoir Co. v. People,* 8 Colo. 614, 9 P. 794. *Elk Rifle, supra,* while recognizing the general rule, admonishes that what constitutes the elements of intent and physical act is not the same in every case, and therefore, each case must and should be considered on an *ad hoc* basis.

We conclude therefore that the trial court was correct in not awarding the Conservation District the 1954 date it claims. The decree of the district court in awarding October 31, 1961 to the Conservation District as its appropriation date for its "Flattops Project" is correct.

Judgment affirmed.

MR. JUSTICE GROVES not participating.