557 P.2d 389 (1976)
In the Matter of the Application for Water Rights of Mills E. BUNGER, in the Gunnison River and its Tributaries, in Gunnison County, Applicant-Appellant,
v.
The UNCOMPAHGRE VALLEY WATER USERS ASSOCIATION et al., Objectors-Appellees.
In the Matter of the Application for Water Rights of Mills E. Bunger, in the Colorado River and its Tributaries.
Tributaries Involved: ROARING FORK IN PITKIN COUNTY, Applicant-Appellant,
v.
COLORADO RIVER WATER CONSERVATION DISTRICT et al., Objectors-Appellees.
Nos. 27050, 27064.
Supreme Court of Colorado, En Banc.
November 22, 1976.
*390 Henry, Cockrell, Quinn & Creighton, Benjamin L. Craig, Peter Wiebe, Jr., Denver, for applicant-appellant.
Stephen F. Child, pro se.
Vranesh & Musick, John D. Musick, Jr., Boulder, Sandra Stuller, City Atty., Richard Wood, County Atty., Aspen, Kingsmith, Russell, Angelo & Wright, Seraphine, Bratton, Alexander & Ranous, Patrick Carrico, Gunnison, Willett & Trupp, Nicholas E. Darrow, Delta, Mincer, Larson & Hartert, Glenwood Springs, Andrew J. Kasic, Jr., Gunnison, Davis, Graham & Stubbs, John M. Sayre, Denver, J. E. DeVilbiss, Delaney & Balcomb, Scott Balcomb, Glenwood Springs, Conover, Denver, for objectors-appellees.
DAY[*], Justice.
This is an appeal from the judgments of the water courts in Water Divisions Nos. 4 *391 and 5 denying four applications for conditional water decrees filed by applicant-appellant. The judgments were entered after arguments on motions for summary judgment by the City of Aspen, the Board of County Commissioners of Pitkin County, and the Colorado River Water Conservation District. The Northern Colorado Water Conservancy District and the Municipal Subdistrict of the Northern Colorado River Water Conservancy District joined in the Colorado River Water Conservancy District's motion in Water Division No. 5. Appeals from the two judgments were consolidated for oral argument in the Supreme Court. We affirm.
The four applications for conditional water rights set out rough outlines of a complex and massive water collection, diversion, and storage plan called the Gunnison-Arkansas Project. It was proposed to collect and divert water from the watersheds of the Roaring Fork and Crystal rivers in Pitkin County (in Division No. 5) to the watershed of the Gunnison River in Gunnison County (in Division No. 4), to collect and divert additional water from the watershed of the Gunnison River and store it in a number of reservoirs to be constructed in the watershed of the Gunnison River; and finally, to transport a portion of the water so collected to the watershed of the Arkansas River east of the continental divide.
It was proposed that the remaining portion of the water so collected and stored would be released for use within the watershed of the Gunnison River. Appellant's (Bunger's) deposition indicates that the water proposed to be collected and diverted from Water Division No. 5 would be stored and transported in the facilities proposed to be constructed in Water Division No. 4 prior to being delivered to the Arkansas River watershed. However, appellant also stated that the water rights claimed in each water division were not essential to the completion of the project in the other division. The Fryingpan-Arkansas Project, which became operative, and the Gunnison-Arkansas Project, which is here involved, were based upon similar proposals made in the 1930's by the Bureau of Reclamation, United States Department of the Interior. These projects were then declared to be separate and distinct.
Appellant was employed by the Bureau of Reclamation during the time of the Bureau's surveys. His employment with the Bureau terminated in 1945, approximately 28 years prior to the filing of the first of these applications under consideration here. It is upon appellant's work as an employee with the Bureau that he claims an appropriation date of April 1, 1937.
Each of the four applications was amended several times, each amendment adding further detail to the ones previously filed. Appellant's deposition was taken. The applications in Division No. 4 were denied by a ruling of the referee in that division. Hearings on the motions for summary judgment were held in district court in both water divisions. Following the hearings, appellant filed additional exhibits, as well as affidavits stating that appellant had placed a number of wooden stakes at various described locations. Judgment denying the conditional decrees was thereafter entered against applicant.
Appellant presents four arguments in this appeal: (1) that summary judgment is not applicable in water adjudication proceedings; (2) that the objectors-appellees have no standing to object; (3) that the court erred in granting summary judgment based upon the facts of this case; and (4) that the water court misinterpreted the necessary "first step" prior to obtaining a conditional decree. We disagree with all of appellant's arguments.

I.
Appellant contends that by the Water Right Determination and Administration Act of 1969, section 37-92-101 et seq., C. R.S.1973, the legislature intended that water courts hold a hearing in every contested water right situation, regardless of the merits of the parties' positions. He cites *392 section 37-92-304(3) which reads as follows:
"As to the rulings with respect to which a protest has been filed and as to matters which have been referred to the water judge by the referee, there shall be hearings conducted in accordance with the Colorado rules of civil procedure; except that no pleadings shall be required."
However, the statute's mandatory language that hearings shall be held where a protest has been filed and on cases of re-referral by a water referee to a water judge must be construed together with C. R.C.P. 1(a), which provides that:
"These rules govern the procedure. . . in all actions, suits and proceedings of a civil nature, whether cognizable as cases at law or in equity, and in all special statutory proceedings. . . . [t]hey shall be liberally construed to secure the just, speedy, and inexpensive determination of every action."
The contested rule which was applied by the water judges regarding summary judgment must therefore be "liberally construed." This court has specifically stated concerning C.R.C.P. 56:
"The obvious purpose to be served by the above rule is to further the prompt administration of justice and expedite litigation by avoiding needless trials and enable one speedily to obtain a judgment by preventing the interposition of unmeritorious defenses for purpose of delay." Blain v. Yockey, 117 Colo. 29, 184 P.2d 1015 (1947).
Where the facts are clear and undisputed, "or [are] so certain as not to be subject to dispute, the court is in position to determine the issue strictly as a matter of law." Morlan v. Durland Trust Co., 127 Colo. 5, 252 P.2d 98 (1952).
The statute requires an applicant to sustain the allegations upon which the claimed rights are based. Applicant's deposition gave the court the facts upon which he relied and were not disputed. The hearings on the motions for summary judgment, together with the depositions in each of the respective water courts, satisfied the requirement of the 1969 Water Act that a hearing be held. The record thus made supports each water court's determination.

II.
Appellant asserts objectors-appellees had no standing to challenge his application or to file objections in the water courts. Appellant has asked this court to apply to this argument cases decided under the Adjudication Act of 1943. C.R.S.1963, § 148-9-1, et seq. That Act, hereinafter referred to as the 1943 Act, was repealed in 1969. The 1943 Act expressly limited participation in adjudication suits to an owner or claimant of any water right in the water district or outside of the water district. C.R.S.1963, 148-9-10(3) and (4). According to that statute, to have standing a person was required to show both ownership of water rights and possible injury thereto.
The 1969 Act, however, is not so limited. The phrase used in the 1943 Act, "owner or claimant of any water right" has been replaced with the phrase "any person who wishes." The expansion by the 1969 Act of the class of persons who may object in a water adjudication is not limited to the filing of objections and supporting documents. "Interested persons" in section 37-92-304(3), C.R.S.1973, can only reasonably be interpreted to refer to the "persons" whose capacity to protest or object is generally described elsewhere in the Act. Any person who qualifies under other sections, (e. g., section 37-92-302(1)(b), section 37-92-304(2) and (4)), is not barred from participating in the hearing mandated by his action.

III.
There is no substance to the argument that the summary judgment has no basis in the record. Entry of summary judgment under C.R.C.P. 56 is proper where "there *393 is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." The rule was designed to enable parties and courts to expedite litigation by avoiding needless trials. As stated in I, supra, these considerations apply to water adjudication proceedings.
In the proceedings, the water courts were presented with applications which were based upon work done by the applicant while he was an employee of the Bureau of Reclamation. He attempted to adopt as his own that work in order to satisfy the requirement of an open first step in the field. Applicant's deposition demonstrating intention to appropriate clearly establishes that the only work done on applicant's own while not employed by the Bureau of Reclamation was done from government maps in his office and, in Water Division No. 4, on-site inspection equipped only with an altimeter and a camera. Appellant's deposition revealed that he claimed no specific appropriations from any of the many streams and rivers mentioned in both districts and had no idea of the respective amounts of water each would contribute to the entire 4000 c. f. s. for which the conditional decrees were sought. He also stated he did not know what entity or entities would ultimately put the water to beneficial use and that he had no financial support for the project. Based upon this information, the water judges granted summary judgment against applicant-appellant. We find no error in the court's rulings.
At the time summary judgments were entered, there was no genuine issue as to any material facts. It is the ultimate questions of fact that a trial court must consider upon motion for summary judgment.
"Evidentiary facts are those facts which are necessary for determination of the ultimate facts. Ultimate facts are the substance of the conclusions from the evidence. . . . The two classes of fact are distinct, but interrelated. Evidentiary facts are the premises upon which the conclusions of ultimate facts are based." Womack v. Industrial Commission, 168 Colo. 364, 451 P.2d 761 (1969).
In the case at bar, in appellant's own deposition he failed to offer any physical facts supporting his claim of having completed a first step toward an appropriation. He then failed to timely offer any affidavit or other evidence showing any new or other facts not brought out in the deposition. The law does not permit him now to claim that in a subsequent hearing on the merits some testimony more favorable to his claim might be established. See Norton v. Dartmouth Skis, Incorporated, 147 Colo. 436, 364 P.2d 866 (1961).

IV.
Appellant claims the dates of April 1, 1937, and March 27, 1970 (the date appellant decided to file the application), as alternate dates of his appropriation. He does so under the doctrine of relation back. For this doctrine to apply, there must have been on the part of claimant both an intention to appropriate the particular water and also an open physical demonstration of that intention to put the water to some valuable use. Four Counties Water Users Association v. Colorado River Conservation District, 161 Colo. 416, 425 P.2d 259 (1967). Either of the elements of intention or open physical demonstration may precede the other under some circumstances.
The Four Counties case, supra, held that although an appropriation is not complete until actual diversion and use, the right may relate back to a valid "first step," and the priority will be measured from that time. A valid "first step" is established when an intent to take water is formed, together with an open, overt act on the land giving notice of the intent to apply the water to a beneficial use. See also Elk-Rifle Water Co. v. Templeton, 173 Colo. 438, 484 P.2d 1211 (1966). Whether a first step has been taken must turn on the facts of each case. Four Counties Water Users Association v. Colorado River Conservation District, supra.
*394 The case of Central Colorado Water Conservation District v. City of Denver, Colo., 539 P.2d 1270 (1975), held that the first prong of the first step is satisfied by the filing of maps, which constituted prima facie evidence of an intent to take water. But the applicant in Central had not made an open demonstration on the land, the second prong or requirement of the test. The undisputed facts in the instant case as to the absence of the second prong are stronger even than in Central. It is undisputed in the case at bar that nothing was done by way of open demonstration on the land in Water Division No. 5 since the Bureau work in the 1930's, which, as the trial court put it, "serves only as a matter of historical background" to the applications.
The physical act and manifestations in pursuance of the intention and the intention itself are separate and distinct. Fruitland Irrigation Co. v. Kruemling, 62 Colo. 160, 162 P. 161 (1916). What the first step consists of is defined at some length in the Fruitland case, supra:
"Certainly the first step demanded. . . is nothing short of an open and notorious physical demonstration, conclusively indicating a fixed purpose to diligently pursue and, within a reasonable time, ultimately acquire a right to the use of water, and as its primary function is to give notice to those subsequently desiring to initiate similar rights, it must necessarily be of such character that they may fairly be said to be thereby charged with at least such notice as would reasonably be calculated to put them on inquiry of the prospective extent of the proposed use and consequent demand upon the water supply involved."
Appellant may not claim, as a basis for his first step, work completed while an employee of the Bureau of Reclamation. This court ruled similarly in Colorado Conservancy District v. Rocky Mountain Power Co., 174 Colo. 309, 486 P.2d 438 (1971). Therein, we held that reports and studies made by the Bureau of Reclamation, where there is no privity between the Bureau and the person seeking to base an appropriation on the Bureau work, do not constitute a basis for such person's claim to a water right unless there has been an assignment or other conveyance of the Bureau's rights to him.
Of prime importance in the instant case is the fact that there was no privity between appellant and the Bureau of Reclamation.
Further, it is fundamental to Colorado water law that an appropriation be made in connection with some land area.
As to application of the water, the appellant stated in his deposition that his only purpose in seeking an appropriation was to save the water for Colorado. He merely expressed hopes to irrigate 600,000 acres of landwhere and owned by whom he had no idea. This does not satisfy the legal requirements.
Similarly, appellant failed to fulfill the requirement that the water taken must be put to beneficial use. In City and County of Denver v. Northern Colorado Water Conservancy District, 130 Colo. 375, 276 P.2d 992 (1954) we stated:
"In order to initiate an appropriation, there must be an intent and purpose by the appropriator, actually to take the water and to put it to beneficial use.. . . Here, neither . . . had any `claim of appropriation'; neither owned or intended to procure any land for irrigation or any power plant for power use. Neither represented any municipality for domestic use. Neither had an `enterprise' for `financing and construction.' Neither attempted to finance or intended to build the system of ditches, reservoirs and tunnel which they platted. They did only token work to give pretense to a right which they might sell. . . . A claim for mere speculative purposes by parties having no expectation themselves of actually constructing works and applying the waters *395 to some useful purpose gives them no rights . . . ."
Here, the situation is remarkably the same. Appellant stated in his deposition that he had no plans for building the project himself; he had no plans for financing it, except that he vaguely planned to form a water district for that purpose. The eventual users were unknown. The recent "survey" or field work with camera was done merely to fulfill appellant's mistaken concept of the statutory requirement. He had no definite calculation of the amount of the appropriation in cubic feet per second or any other exact calculation; he had roughly estimated the annual Spring flooding and his figures reflect that estimate.
The judgments in each application are affirmed.
CARRIGAN, J., does not participate.
NOTES
[*] Retired Supreme Court Justice sitting under assignment of the Chief Justice under provision of Article VI, Section 5(3) of the Constitution of Colorado.