676 P.2d 1162 (1984)
Joe H. LIONELLE and Joe E. Lionelle, Appellants,
v.
SOUTHEASTERN COLORADO WATER CONSERVANCY DISTRICT, a Colorado quasi-municipal corporation, and Robert W. Jesse, in his official capacity as Division Engineer for Water District No. 2, Appellees.
No. 81SA508.
Supreme Court of Colorado, En Banc.
February 6, 1984.
*1163 Saunders, Snyder, Ross & Dickson, John M. Dickson, Jack F. Ross, W.B. Tourtillot, Jr., Denver, for appellants.
Fairfield & Woods, Kevin B. Pratt, Howard Holme, Charles Beise, Denver, for appellee, Southeastern Colorado Water Conservancy District.
J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., David Aschkinasi, Asst. Atty. Gen., Denver, for appellee, Robert W. Jesse.
Holland & Hart, Charles M. Elliott, Mary S. Mead, Denver, for amicus curiae, Upper Arkansas Water Conservancy District.
ERICKSON, Chief Justice.
This appeal was taken after partial summary judgment was entered by the District Court in and for Water Division No. 2 (water court) denying the application of appellants, Joe H. and Joe E. Lionelle (Lionelles) to enlarge the Donnell Reservoir for the storage of water for domestic, irrigation, municipal, industrial, and hydroelectric purposes. We affirm.

I.
On December 24, 1979, the Lionelles filed an application for a conditional water storage right pursuant to the Water Right Determination and Administration Act of 1969, sections 37-92-101 et seq., C.R.S. 1973. The Lionelles sought to enlarge the existing capacity of the Donnell Reservoir by raising the present thirty-two foot high dam to a height of forty-six feet. According to the Lionelles' application, the enlargement would have increased the total capacity of the reservoir by 724.2 acre feet.[1] The source of the appropriation for *1164 the initial fill of the enlargement would be the Arkansas River. At present and for many years in the past, the Arkansas River has been overappropriated.
The Lionelles' application stated that an appropriation of the water was initiated when they conducted a survey of the proposed enlargement on September 24, 1978, at a cost of $1,840. The application set forth the following statement with respect to the proposed use of the water: "Applicants will use the enlargement for domestic, irrigation, municipal, industrial and hydroelectric uses."[2]
On February 28, 1980, the Southeastern Colorado Water Conservancy District (District) filed a timely statement of opposition, and asserted that the Lionelles' application should not be granted because:
"a. The District owns various vested water rights which could be injuriously affected by the application.
"b. There is no unappropriated water available for appropriation. We request the application be denied or the Applicant be enjoined from using the proposed enlargement unless the Applicant can affirmatively show the Division Engineer he is diverting in priority.
"c. Applicant should have no benefit from the Donnell Reservoir decrees unless he owns them."
The water referee, on March 5, 1980, determined in his discretion not to make a ruling on the matter and rereferred the cause to the water judge pursuant to section 37-92-303(2), C.R.S.1973. On March 11, 1980, the water court ordered that the trial on the matter be set for August 11, 1980.
On March 21, 1980, the District filed both a request for production of documents and a set of interrogatories.[3] The date set for trial was subsequently vacated because of the Lionelles' failure to respond to the District's discovery requests. On September 9, 1980, the water court ordered that a pretrial conference be held on November 3, 1980, and that the Lionelles comply with the District's discovery requests.[4]
At the pretrial conference, on November 3, 1980, the District filed an amended statement of opposition,[5] a request for admissions, and a pretrial statement. That same day, the Lionelles filed their pretrial statement.
On January 6, 1981, the District moved for partial summary judgment on the grounds:
"1. The Applicants must have an approved plan for augmentation before they are granted a conditional water right decree.
"2. The Applicants lack the requisite intent to appropriate water and put it to a beneficial use.
"3. The Applicants cannot and will not store water and, therefore, a conditional water right cannot be granted."
*1165 The Lionelles did not respond to the District's motion for partial summary judgment, and on February 3, 1981, the District requested determination of the motion for partial summary judgment on the basis of the Lionelles' answers to interrogatories, and its request for admissions to which the Lionelles had not responded.
In March, 1981, the District agreed to pass the case at the suggestion of the Lionelles' counsel that he would initiate settlement discussions. However, on August 4, 1981, no settlement discussions had been initiated and the District submitted its request for determination of its motion for partial summary judgment by the water court.
On September 8, 1981, the Lionelles filed a motion for leave to file a late response to the District's request for admissions, accompanied with a proposed response to the request for admissions. Although the record is unclear, it appears that the water court did not grant the motion. Counsel agreed, that same day, in open court that the District's motion for partial summary judgment could be decided upon the briefs without oral argument. The District filed a memorandum in support of its motion. No other briefs were filed. The record reflects that the Lionelles did not file any pleadings, depositions, or answers to interrogatories with the water court relating to a plan for augmentation.[6] On November 29, 1981, the water court granted the District's motion for partial summary judgment and dismissed the Lionelles' application.[7]
The Lionelles contend that the water court improperly dismissed their application for a conditional water storage right. We disagree.[8]

II.

A.
The Lionelles assert that the water court erred when it granted the District's motion for partial summary judgment and dismissed *1166 their application on the ground that the Lionelles must have an approved plan for augmentation before they could be granted a conditional water storage right decree. In the Lionelles' view, the summary judgment was improper because, had summary judgment not been entered, they would have adduced at the hearing evidence that their proposed plan for augmentation would have offset any potential injury due to the increase in evaporation loss resulting from the proposed enlargement. They contend also that their initial fill of the enlargement could be accomplished without injury to other users by purchasing outright the water rights of other senior appropriators. The Lionelles assert that they did not file a plan for augmentation because they had no reason to believe initially that it was "more probable than not" that their proposed enlargement and storage of water for hydroelectric purposes would injure senior water rights.
Section 37-92-302(1)(a), C.R.S.1973 (1983 Supp.) provides in part:
"(1)(a) Any person who desires a determination of a water right or a conditional water right and the amount and priority thereof, including, ... approval of a plan for augmentation, ... shall file with the water clerk in quadruplicate a verified application setting forth facts supporting the ruling sought, ...."
The statute further provides that the water judges of various divisions shall prepare and supply to the water clerks standard forms which shall be used for the applications. Section 39-92-302(2). In the case of applications for an approval of a plan for augmentation: "[T]he forms shall require a complete statement of such plan." Section 37-92-302(2), C.R.S.1973.[9] A plan for augmentation shall be approved if such plan will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right. Section 37-92-305(3), C.R.S. 1973. The referee or water judge, in reviewing a proposed plan for augmentation and in considering terms and conditions which may be necessary to avoid injury, shall consider:
"[T]he depletions from an applicant's use or proposed use of water, in quantity and in time, the amount and timing of augmentation water which would be provided by the applicant, and the existence, if any, of injury to any owner of or persons entitled to use water under a vested water right or a decreed conditional water right. A plan for augmentation shall be sufficient to permit the continuation of diversions when curtailment would otherwise be required to meet a valid senior call for water, to the extent that the applicant shall provide replacement water necessary to meet the lawful requirements of a senior diverter at the time and location and to the extent the senior would be deprived of his lawful entitlement by the applicant's diversion."
Section 37-92-305(8), C.R.S.1973 (1983 Supp.) (emphasis supplied).
Bohn v. Kuiper, 195 Colo. 17, 575 P.2d 402 (1978), is instructive in determining whether an approved plan for augmentation was necessary before a conditional water right could be adjudicated in the present case. In Bohn v. Kuiper, supra, the applicant proposed to drill a well and to pump 2,000 gallons of water per minute to irrigate certain real property. The state engineer denied a permit for the well on the grounds that he was unable to find (1) that vested water rights of senior appropriators would not be materially damaged by use of the water from the well and (2) that unappropriated water was available for withdrawal from the well. See section 37-90-137(2), C.R.S.1973. The applicant then applied to the water court for a conditional water decree authorizing construction of *1167 the well. The water court, in granting the application, reached the conclusion that operation of the well in accordance with an approved plan for augmentation would eliminate any injury which might otherwise be caused to vested senior water rights.[10] No plan for augmentation was, however, before the court. At trial, the applicant conceded that the pumping of the well during the irrigation season would cause injury to senior water rights unless the water pumped from the well was replaced. We reversed the water court's order granting the application, and stated:
"If we were to permit this conditional decree to stand, than anyone desiring to drill a well might obtain such a conditional decree. This is not consistent with orderly adjudication of water rights. It opens the door to chaotic conditions in the offices of water clerks, the State Engineer and division engineers. Before being awarded such a decree, the applicant must submit a plan of augmentation for approval or show that he has joined an organization which has an approved plan of augmentation."
195 Colo. at 19, 575 P.2d at 403 (emphasis supplied).
In this case, there are two separate bases upon which it is alleged that a granting of the conditional water storage right to the Lionelles would result in injury to persons entitled to use the water under a vested water right or a decreed conditional water right. The District first asserts that the Lionelles' initial fill of the enlargement of the reservoir would adversely impact the water rights of other users. The District contends also that evaporation loss from the proposed enlargement would reduce the amount of water flowing in the Lake Fork below the reservoir and therefore cause injury to those persons entitled to use the water. In the District's view, the water court properly dismissed the Lionelles' application because the Lionelles did not submit a plan for augmentation for approval setting forth a method for protecting the rights of those persons entitled to appropriate the water.
We reject the Lionelles' assertion that they should not be penalized for failing to file a plan for augmentation because they had no reason to believe initially that it was "more probable than not" that their proposed enlargement and storage of water would injure the water rights of others.
The Lionelles failed to respond in a timely manner to the District's request for admissions and therefore admitted:[11]
"1. The proposed enlargement of the reservoir will result in a larger surface area and, therefore, greater evaporation losses from water impounded in the reservoir.
"2. Evaporation losses from the proposed enlarged reservoir would reduce the amount of water flowing in the Lake Fork below the reservoir.
"3. Evaporation losses from the enlarged reservoir would cause injury to the Arkansas River and the Lake Fork of the river."
Despite these admissions of injury to other users, the Lionelles did not submit a plan for augmentation to the water court.
Our review is limited to the facts which were before the water court. Because the record established that injury would result from the proposed enlargement of the reservoir, the water court correctly ruled that the Lionelles, before being awarded such a conditional water storage *1168 right, had to submit a plan for augmentation for approval or show that they had joined an organization which had an approved plan for augmentation. Bohn v. Kuiper, 195 Colo. 17, 575 P.2d 402 (1978); see also, section 37-92-103(9), C.R.S.1973 (1983 Supp.).[12] The Lionelles submitted no such plan in this case and we therefore affirm the water court's granting of partial summary judgment. See Bunger v. Uncompahgre Valley, 192 Colo. 159, 557 P.2d 389 (1976).

B.
The Lionelles further contend that the water court erred when it granted the District's motion for partial summary judgment and dismissed their application on the ground that the Lionelles lack the requisite intent to appropriate water and put it to a beneficial use.
A conditional water right is the "right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." Section 37-92-103(6), C.R.S.1973. The purpose of a conditional water decree is to allow an appropriation of water to relate back to the time of the "first step" toward that appropriation. Four Counties Water Users Association v. Colorado River Water Conservation District, 159 Colo. 499, 414 P.2d 469 (1966).
The "first step" consists of two prongs: (1) The formation of an intent to appropriate a definite quantity of water and put it to a beneficial use; (2) an overt manifestation of that intent through physical acts sufficient to constitute notice to third parties. See Central Colorado Water v. Denver, 189 Colo. 272, 539 P.2d 1270 (1975). The facts of each case must be considered on an ad hoc basis to determine whether there is an intent to appropriate coupled with an open physical demonstration of that intent. Elk-Rifle Water Co. v. Templeton, 173 Colo. 438, 484 P.2d 1211 (1971).
In Colorado River Water Conservation District v. Vidler Tunnel Water Co., 197 Colo. 413, 594 P.2d 566 (1979), a case similar in many important respects to this case, we ruled that evidence of future needs and uses of water by certain municipalities, without firm contractual commitments from any municipality to use any of the water, was insufficient to show the intent to appropriate water and put it to a beneficial use. In that case, the water court awarded a conditional water storage right to the applicant, Vidler Tunnel Water Co. (Vidler), for storage of 156,238 acre feet of water in its proposed reservoir. Vidler was a Colorado corporation organized to supply and deal in water for many different purposes. The water court decree stated specifically that, should appropriation be effected, the water should be used for municipal, industrial, domestic, irrigation, and electrical energy generation purposes. The record established that Vidler, during the initial planning phase of its project, conducted on-site inspections and arrived at the conclusion that the proposed reservoir was feasible and that sufficient water was available to accomplish Vidler's purposes. Vidler then decided to proceed with the project. Approximately one year later, Vidler employed, at a cost of approximately $122,000, professional engineers, surveyors, and attorneys to define the size and location of the reservoir and to determine the availability of water. Later, engineers were retained to design hydroelectric and power facilities for the reservoir and to apply for a preliminary permit for the overall project. The record indicates that Vidler had obtained initial financing for its expenditures. Subsequently, Vidler granted the City of Golden an option to purchase *1169 2,000 acre feet of water together with a right of refusal for an additional 3,000 acre feet, all conditioned on the success of the project. Vidler planned to sell the remainder of the water from the project to various municipalities; no contracts for use of the water had, however, been entered into with any of the entities. We reversed,[13] and ruled that the evidence presented regarding future needs and uses of the water by the municipalities contacted by the applicant, Vidler, fell short of what is necessary to evidence an intent to appropriate. We stated:
"Vidler has no firm contractual commitment from any municipality to use any of the water. Even the City of Golden has not committed itself beyond an option which it may choose not to exercise. The mere negotiations with other municipalities clearly do not rise to the level of definite commitment for use required to prove the intent here required."
197 Colo. at 417, 594 P.2d at 568. Thus, in Vidler, supra, we reaffirmed our longstanding view that conditional decrees will not be granted to those who cannot show more than a speculative or conjectural future beneficial use. Rocky Mtn. Power Co. v. Colorado River Water Conservancy District, 646 P.2d 383 (Colo.1982).
In 1979, the Colorado General Assembly amended section 37-92-103(3), C.R.S.1973, and added what is now section 37-92-103(3)(a)(I) and (II) which provides:
"(3)(a) `Appropriation' means the application of a specified portion of the waters of the state to a beneficial use pursuant to the procedures prescribed by law; but no appropriation of water, either absolute or conditional, shall be held to occur when the proposed appropriation is based upon the speculative sale or transfer of the appropriative rights to persons not parties to the proposed appropriation, as evidenced by either of the following:
(I) The purported appropriator of record does not have either a legally vested interest or a reasonable expectation of procuring such interest in the lands or facilities to be served by such appropriation, unless such appropriator is a governmental agency or an agent in fact for the persons proposed to be benefited by such appropriation;
(II) The purported appropriator of record does not have a specific plan and intent to divert, store, or otherwise capture, possess, and control a specific quantity of water for specific beneficial uses."
As in Vidler, supra, the evidence presented in this case by the Lionelles regarding future needs and uses of the water falls short of what is necessary to evidence an intent to appropriate.[14] It is apparent that the District's carefully drafted request for admissions and set of interrogatories were designed to elicit from the Lionelles admissions and responses directed to the criteria for ascertaining appropriative intent which provided the foundation for the determination made in Vidler, supra. For example, the Lionelles admitted, by their failure to respond in a timely fashion to the District's request for admissions, that they: (a) are not a municipality or governmental entity; (b) are not an agent for any municipality or other governmental entity for the procurement of an increased water supply; (c) do not require the water of the proposed enlarged reservoir for use on lands they own or lease; and (d) have no contractual commitment with any municipality or other governmental entity to use the reservoir enlargement.[15] The Lionelles stated in response to the District's Interrogatory No. 4:

*1170 "[Q]: What efforts are Applicants now making or have they made since the application was filed to utilize the waters claimed for municipal, industrial, and hydroelectric purposes, and what is the current status of such negotiations, correspondence, or contracts?
"[A]: Applicants are in the process of trying to secure a conditional decree for the enlargement of the Donnell rights with a priority date of September 24, 1978. Additional work in the negotiation of and solicitation of agreements and contracts for placing waters under the enlargement to municipal, industrial, and hydroelectric purposes, has been held in abeyance pending obtaining a decree for enlargement and use of the existing additional capacity available in the Donnell Reservoirs."
The Lionelles do not state that they plan to construct and operate a hydroelectric facility themselves, or that they have contractual arrangements with others to do so. In fact, their answer to Interrogatory No. 4 indicates to the contrary. In our view, the ultimate users of the water are not clearly specified. Rocky Mtn. Power Co. v. Colorado River Water Conservancy District, supra. "Our constitution guarantees a right to appropriate, not a right to speculate. The right to appropriate is for use, not merely for profit." Vidler, supra, 197 Colo. at 417, 594 P.2d at 568. "To recognize conditional decrees grounded on no interest beyond a desire to obtain water for sale wouldas a practical matterdiscourage those who have need and use for the water from developing it." Id. The same can be said with respect to obtaining the use of water for power generation purposes. Therefore, in view of the evidence that was before the water court, we hold that the water court was correct in finding that the Lionelles lacked the requisite intent to appropriate water and put it to a beneficial use.
Accordingly, we affirm the water court's granting of partial summary judgment in this case.
KIRSHBAUM, J., does not participate.
NOTES
[1] The existing capacity of the reservoir is decreed solely for irrigation purposes.
[2] On appeal, the Lionelles have conceded that their application to enlarge the reservoir for the purpose of storing water for irrigation, domestic, municipal, and industrial uses is premature. They maintain, however, that they are entitled to a decree for an enlargement of the reservoir for hydroelectric purposes.
[3] The Lionelles' answers to the interrogatories were filed on December 8, 1980, approximately nine months later.
[4] At the pretrial conference, the Lionelles were again directed by the water court to file responses to the District's set of interrogatories.
[5] The amended statement of opposition incorporated the District's original statement, and asserted in addition:

"d. Applicant should not be permitted to enlarge the reservoir unless he can affirmatively show that the enlarged area of the reservoir will only submerge lands owned by the Applicant, or with permission or condemnation of the other landowner.
"e. Applicant claims an amount of water in excess of that which would be impounded by the Applicant's proposed dam.
"f. The proposed enlargement is solely for speculative purposes.
"g. The Applicant has submitted no plan for augmentation. The increased size of the reservoir will cause greater evaporation losses, to the detriment of the vested water rights of others. A plan for augmentation is required before a conditional decree is granted. Bohn v. Kuiper, 195 Colo. 17, 575 P.2d 402 (1978)."
[6] In the Lionelles' opening brief to this court, they explain, for the first time, how they intend to avoid injury to those persons entitled to use the water. Regarding the possible injury resulting from the Lionelles' initial fill of the enlargement, the Lionelles assert: "Even though the Arkansas River is over-appropriated in any one year, there are always users who, for one reason or another, are willing to sell their water." In other words, the Lionelles apparently allege that an initial fill could be accomplished without injury to other users by purchasing outright the rights of existing appropriators. The District, in its answer brief, disputes this claim.

Regarding the possible injury resulting from the evaporation loss, the Lionelles argue, again for the first time on appeal:
"[The Lionelles] expected to install a penstock from the outlet works to the floor of the valley below making use of a 1,300 foot power drop to generate hydroelectric power. The enlarged lake surface would result in more evaporation than occurred at the Donnell Lakes historically. On the other hand, putting the water into a penstock and preventing its evaporation and infiltration transportation losses on the way to the valley floor, would result in a substantial saving of water. Whether the evaporation from the enlargement exceeds the saving in transportation losses is a matter for expert testimony. It seems quite probable that because of the protected location of the lake and its elevation that the saving in transportation losses will exceed the increased lake evaporation with the result that no augmentation water will be required to prevent injury to others."
According to the record, neither of these plans for augmentation was before the water court. We need not reach therefore the question whether the plans themselves, assuming of course that they had been properly filed and were before the water court, would have been sufficient to remedy the alleged injuries in this case.
[7] The water court found in part:

"No findings of fact or conclusions of law are necessary in ruling on such a motion. McNeece v. McNeece, 39 C.App. 160, 562 P.2d 767 (1977). The Court finds and concludes that the pleadings, admissions on file and answers to interrogatories show that there is no genuine issue as to any material fact and that movant is entitled to summary judgment as a matter of law on the issues presented in paragraphs 1 and 2 of its said motion."
[8] As a preliminary matter, we limit our decision in this case to the issues raised by the dismissal of the Lionelles' application. Both parties concede that the respective ownership rights of the Lionelles, the State of Colorado, Chaffee County, and the Upper District in the Donnell Reservoir are not before this court for determination at this time.
[9] In 1983, the General Assembly made explicit what information must be contained in a plan for augmentation by adding the language beginning with "including": "[T]he forms shall require a complete statement of such change or plan, including a description of all water rights to be established or changed by the plan, a map showing the approximate location of historic use of the rights, and records or summaries of records of actual diversions of each right the applicant intends to rely on to the extent such records exist."
[10] See section 37-92-305(6), C.R.S.1973, with respect to standards to be applied by a water judge in acting on an application for determination of a conditional water right in such circumstances. See also State v. Southwestern Colorado Water Conservation District, 671 P.2d 1294, 1315 n. 36 (1983).
[11] The District filed a request for admissions on November 3, 1980. The Lionelles did not respond to the District's request until September 8, 1981, approximately ten months later. It appears from the record that the water court did not grant the Lionelles' motion for leave to file a late response to the District's request for admissions. Therefore, because of the Lionelles' failure to timely reply to the request for admissions, the statements in the request will be deemed admitted. C.R.C.P. 36(a).
[12] Section 37-92-103(9) provides in pertinent part:

"`Plan for augmentation' means a detailed program to increase the supply of water available for beneficial use in a division or portion thereof by the development of new or alternate means or points of diversion, by a pooling of water resources, by water exchange projects, by providing substitute supplies of water, by the development of new sources of water, or by any other appropriate means."
[13] In Vidler, supra, this court reversed, in part, and ruled that the trial court erred in awarding a conditional decree to the water claimed for use by the municipalities. We also affirmed, in part, and held that Vidler did present sufficient evidence to demonstrate its intent to appropriate water for use on land it has or holds under lease.
[14] We reject the Lionelles' argument that Vidler, supra, is inapposite to this case because that case dealt with an applicant's intent to appropriate un appropriated waters.
[15] See supra note 10.