The FORT LYON CANAL COMPANY,
Protestant-Appellant,

v.

The AMITY MUTUAL IRRIGATION
COMPANY, Applicant-Appellee,

and

Jeris A. Danielson, State Engineer, and
Robert W. Jesse, Division
Engineer, Appellees.

No. 82SA226.

Supreme Court of Colorado,
En Banc.

Sept. 17, 1984.
Rehearing Denied Oct. 22, 1984.

Lefferdink & Davis, John J. Lefferdink, Lamar, Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, P.C., Ronda L. Sandquist, Denver, for protestant-appellant Fort Lyon Canal Co.

Carl M. Shinn, Lamar, for applicant-appellee Amity Mut. Irr. Co.

Jeris A. Danielson, State Engineer, Denver, Robert W. Jesse, Div. Engineer, Pueblo, no appearance.

LOHR, Justice.

This is an appeal by The Fort Lyon Canal Company (Fort Lyon) from a decree of the District Court for Water Division No. 2, granting to The Amity Mutual Irrigation Company (Amity) an absolute storage right for 2,565 acre feet of water and a conditional storage right for 12,635 acre feet. We reverse.

On May 21, 1979, Amity applied for the right to store 15,200 acre feet of water in the Horse Creek Reservoir, fed by Wild Horse Creek. The proposed use for the stored water is irrigation. The referee granted to Amity an absolute storage right decree in the requested amount, with a priority date of November 18, 1933.

Fort Lyon protested the award of a storage right to Amity, contending that no facility for the water storage was in existence, and that the requirements for a valid appropriation had not been fulfilled by Amity. After a hearing, the water judge modified the referee's ruling to decree an absolute storage right for 2,565 acre feet of water and a conditional storage right for 12,635 acre feet of water, each with a priority date of November 18, 1933.[1] Fort Lyon appeals.

I.

We summarize the facts as found by the trial court, and as otherwise established by the record. In 1933 or 1934 the Works Progress Administration (WPA) built a dam forming the Horse Creek Reservoir, and water was subsequently stored therein. On February 24, 1934, the town of Holly, Colorado, filed with the state engineer a map of Horse Creek Reservoir and a statement claiming a storage right of 2,565 acre

---

1. The decree specified that each priority date was awarded subject to the provision that Amity's right is junior to all priorities awarded in cases filed before 1979 and is junior as otherwise provided in section 37-92-306, 15 C.R.S. (1973). The referee's ruling had contained a like provision.

feet "for flood prevention purposes."[2] The map and statement recited November 18, 1933, as the day on which a survey marked the commencement of work on the reservoir. The court further found that the water stored in Horse Creek Reservoir "was used through the Amity system to irrigate beets on 140 or more acres." The only evidence of beneficial use of the water supporting this finding was testimony from a single witness that he observed water released on one occasion for a period of twenty-four to thirty-six hours for the purpose of irrigating sugar beets. In 1935 a flood washed out the dam and it was not rebuilt.

The trial court also found that in 1963, 1971 and 1977 Amity and Holly had jointly applied to the Soil Conservation Service of the United States Department of Agriculture for a study concerning irrigation and flood control on Wild Horse Creek.[3] A 1980 deed and assignment from the town of Holly to Amity, transferring all of the town's "right, title and interest in and to the Horse Creek Reservoir," was filed in the protest proceeding. The water judge found that Amity had been prevented from prosecuting its plan to reconstruct the dam because of the delay in obtaining a deed from Holly and because Amity had experienced financial problems.[4] The court further found, however, that Amity's intent to rebuild the dam had been demonstrated by its assistance in the preparation of various reports and by unspecified records which were lost in a flood in 1965.

The trial court concluded from its findings that Amity had shown the requisite intent to appropriate water and had stored a "large quantity of water" in Horse Creek Reservoir in 1933 or 1934, up to the capacity of 2,565 acre feet. Based upon this storage and the subsequent application of the water to the irrigation of sugarbeets, the trial court awarded an absolute decree for storage of 2,565 acre feet of water, the original capacity of the reservoir, for the purpose of irrigation. The court further concluded that the facts justified the award of a conditional storage decree for 12,635 acre feet of water, the balance of the capacity of the reservoir proposed to be built by Amity, also for the purpose of irrigation. The trial court also held that, since the conclusion was "inescapable" that the WPA originally constructed the reservoir for the town of Holly, privity between Amity and the WPA was not necessary, and that, further, the necessary privity between Amity and Holly was established by Amity's single application of the stored water for irrigation and by the deed and assignment from Holly to Amity. Finally, the trial court concluded that Amity's financial difficulties and the delay in obtaining the deed from Holly justified Amity's nonuse of the water and failure to proceed with its plan to reconstruct the dam.

## II.

Fort Lyon first contends that the evidence in the record is insufficient to support the absolute storage right decree for 2,565 acre feet of water with a priority date of November 18, 1933. We agree with this contention.

The Colorado General Assembly has declared that "[t]he right to store water of a natural stream for later application to beneficial use is recognized as a right of appropriation under the Colorado constitution."

2. The statement originally contained the following sentence: "The total capacity of said reservoir is 111,857,050 [commas supplied] cu. ft. of water for which claim is made for domestic and flood prevention purposes." This sentence was altered by striking out the words "which claim is made for domestic and," leaving the sentence as follows: "The total capacity of said reservoir is 111,857,050 [commas supplied] cu. ft. of water for flood prevention purposes."

3. The water judge found that "[i]n 1963, 1971 and 1977 Amity and Holly joined forces and made an application to the Soil Conservation Service for a study concerning agricultural use and flood control." A study report completed in 1973 refers to a "proposed dam" creating a reservoir capacity of 15,200 acre feet of water.

4. This deed from Holly to Amity, although "filed" with the court, was not offered or admitted into evidence and does not appear in the record.

Ch. 261, sec. 1, § 37–87–101(1), 1984 Colo. Sess.Laws 961. We have long recognized that to be the case. *See, e.g., City and County of Denver v. Northern Colorado Water Conservancy District*, 130 Colo. 375, 387–88, 276 P.2d 992, 999 (1954); *Handy Ditch Co. v. Greeley & Loveland Irrigation Co.*, 86 Colo. 197, 199, 280 P. 481, 481 (1929); *Highland Ditch Co. v. Union Reservoir Co.*, 53 Colo. 483, 485, 127 P. 1025, 1025 (1912). An appropriation is defined by section 37–92–103(3), 15 C.R.S. (1983 Supp.), as "the application of a certain portion of the waters of the state to a beneficial use." Beneficial use is "the use of that amount of water that is reasonable and appropriate under reasonably efficient practices to accomplish without waste the purpose for which the appropriation is lawfully made ...." § 37–92–103(4), 15 C.R.S. (1973). Section 37–92–305(9)(a), 15 C.R.S. (1983 Supp.), provides that "[n]o claim for a water right [for storage] may be recognized or a decree therefor granted except to the extent that the waters have been ... stored ... and have been applied to a beneficial use ...."

 The first essential of an effective appropriation is the actual diversion of a definite quantity of water with intent to apply that water to a beneficial use. *City and County of Denver v. Northern Colorado Water Conservancy District*, 130 Colo. at 386, 276 P.2d at 998. In the present case, evidence of the necessary intent to apply the stored water to a beneficial use is lacking. The record shows that the town of Holly filed a map and statement indicating that the dam was designed for "flood control purposes." The only other evidence of intent on the part of Holly or Amity to apply the water stored was the single occasion on which a certain acreage of sugar beets was irrigated with the stored water. The record is devoid of any evidence to establish the amount of water used and does not support the trial court's finding that the full capacity of the reservoir was applied to irrigate the sugar beets. Based on the record, it is impossible to infer the intent to appropriate a definite quantity of water necessary to support the absolute decree. *See Baca Irrigating Ditch Co. v. Model Land and Irrigation Co.*, 80 Colo. 398, 252 P. 358 (1927).[5]

### III.

 Fort Lyon also contends that the trial court erred in granting to Amity a conditional storage decree for 12,635 acre feet of water with a priority date of November 18, 1933.[6] We agree.

 Section 37–92–103(6), 15 C.R.S. (1973), defines a conditional water right as "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." Conditional water decrees are designed to establish that the "first step" toward the appropriation of a certain amount of water has been taken and to allow the relation back of the ultimate appropriation to the date of that first step. *See* § 37–92–305(1), 15 C.R.S. (1973); *Lionelle v. Southeastern Colorado Water*

---

**5.** Moreover, the same privity deficiencies discussed in part IV of this opinion provide an independent and sufficient reason for reversal of the 2,565 acre feet absolute storage right decree.

**6.** Amity filed an Application for Water Storage Right without specifying whether it was seeking an absolute or a conditional decree. While denying an absolute storage decree for the 12,635 acre feet, the water judge found that the evidence in the record supported a conditional decree, which was duly entered. Authority for the water judge's action can be found in C.R.C.P. 54(c), which directs the trial courts to grant the relief to which a party is entitled even if the party has not specifically requested such relief. The Colorado Rules of Civil Procedure do not govern water adjudication proceedings insofar as the rules conflict with the procedure specified by statute. *See* C.R.C.P. 81(a) and *Colorado River Water Conservation District v. Rocky Mountain Power Co.*, 174 Colo. 309, 486 P.2d 438 (1971), *cert. denied*, 405 U.S. 996, 92 S.Ct. 1245, 31 L.Ed.2d 465 (1972). However, we see no conflict between any portion of the statutes providing for water adjudication proceedings and C.R.C.P. 54(c). *See* the Water Right Determination and Administration Act of 1969, Article 92 of Chapter 37, 15 C.R.S. (1973 and 1983 Supp.).

*Conservancy District,* 676 P.2d 1162 (Colo. 1984) *(Lionelle)*; *Colorado River Water Conservation District v. Vidler Tunnel Water Co.,* 197 Colo. 413, 594 P.2d 566 (1979); *Four Counties Water Users Association v. Colorado River Water Conservation District,* 159 Colo. 499, 414 P.2d 469 (1966). The burden of proving that the first step has been completed on a particular date is on the applicant for the conditional decree. § 37–92–304(3), 15 C.R.S. (1983 Supp.). And the priority date of the ultimate appropriation relates back to the date of the first step only if the appropriation has been completed with reasonable diligence. § 37–92–305(1), 15 C.R.S. (1973); *Colorado River Water Conservation District v. Vidler Tunnel Water Co.,* 197 Colo. at 416, 594 P.2d at 568.

We have held that the "first step" required for the relation back of a conditional water decree must consist of the concurrence of the intent to appropriate a definite quantity of water for beneficial use with an overt manifestation of that intent through physical acts sufficient to constitute notice to third parties. *Lionelle,* 676 P.2d at 1168; *Elk-Rifle Water Co. v. Templeton,* 173 Colo. 438, 445, 484 P.2d 1211, 1214–15 (1971). The determination whether the requisite first step has been taken must be made on an *ad hoc* basis, taking into account the particular facts in each case. *Id.*

■ In the present case the priority date of November 18, 1933, is unsupported by the first step necessary for the relation back to that date. There is no suggestion in this record of any intent in 1933, on the part of Amity or the town of Holly, to proceed with any project at the site of the Horse Creek Reservoir other than the WPA dam creating a reservoir with a capacity of 2,565 acre feet of water. The evidence suggesting the formation of the intent to construct such a project *after* the dam was washed out—which amounted to testimony simply that the project had been "rumored and talked about" for a number

of years and that Amity had assisted in certain studies—does not indicate the existence of the necessary intent in 1933. The sole reference in the record to a project creating a reservoir with a capacity of 15,200 acre feet of water is contained in a "Watershed Investigation Report" prepared in 1973 by the Soil Conservation Service of the United States Department of Agriculture. It is readily inferable from this record that a project such as that contemplated by the conditional decree for 12,635 acre feet of water was not intended by the WPA, Amity or Holly at the time of the construction of the original dam.

The evidence is insufficient to establish the requisite intent in 1933 to allow the relation back in the conditional decree to the 1933 date of the original WPA project.

### IV.

■ As noted, the district court granted to Amity an absolute storage right decree for 2,565 acre feet of water with a priority date of November 18, 1933. Since we hold in Part II of this opinion that Amity is not entitled to an absolute storage decree, the issue necessarily arises as to whether Amity is entitled to a *conditional* storage decree for the 2,565 acre feet of water with a priority date of November 18, 1933.[7] C.R.C.P. 54(c) *(see supra* note 5). We hold that Amity is not entitled to such a conditional decree.

November 18, 1933, is the date on which a survey commenced the work performed by the WPA on the dam, according to the map and statement filed by Holly in February of 1934. The record does not show, as of that date or any other date, that the WPA had an express or implied contract or agreement with Holly to construct the dam with the intent that Holly would apply the stored waters to beneficial use for irrigation purposes; that the WPA ever expressly or impliedly conveyed whatever interest it had in the reservoir or the stored waters to Holly; or that the WPA and Holly were

**7.** Because of its decree of an absolute storage right, the district court did not discuss the possibility that Amity might be entitled to a condi-

tional storage decree for the 2,565 acre feet at issue.

in privity in any way. Evidence in the record does not support the district court's finding that the "WPA constructed Horse Creek Reservoir for [the] Town of Holly," thereby obviating the need for privity between the WPA and Holly with regard to the rights to the stored water for the purpose of application to beneficial use. The construction of the dam by the WPA may have benefited Holly, and may have been *intended* to benefit Holly, by reducing the risk of damaging floods.[8] However, there is no showing of any agreement between the WPA and Holly (and, subsequently, Amity as successor-in-interest to Holly) that Holly would apply the stored waters to the beneficial use of irrigation.

The record also indicates a parallel lack of privity between the WPA and Amity. Amity's one application of an indeterminate amount of water from the reservoir for the purpose of irrigation, without more, is not sufficient to establish the existence of a mutual or successive relationship between the WPA and Amity to apply the stored waters of the reservoir to beneficial use. Certainly, this act by Amity is not evidence of any privity existing between the WPA and Amity when the WPA began its survey work on November 18, 1933, the date to which Amity desires to relate back for its appropriation priority.

Thus, even assuming that the action taken by the WPA on November 18, 1933, represents the concurrence of the intent to appropriate a definite quantity of water for beneficial use with an overt physical act evincing that intent sufficient to entitle the WPA to a conditional decree,[9] this "first step" towards a perfected appropriation cannot be attributed to Holly because of a lack of privity. Nor can it be attributed to Amity, directly or through Holly, for the same reason. Furthermore, survey work or any other work performed by the WPA

cannot be considered the "first step" in Amity's perfection of its appropriation solely because Amity later utilized the work of the WPA absent further evidence of privity between the government agency and the subsequent, private appropriator. *Bunger v. Uncompahgre Valley Water Users Ass'n*, 192 Colo. 159, 167, 557 P.2d 389, 394 (1976) (reports and studies of the Bureau of Reclamation do not constitute the "first step" to an appropriation that utilizes such work unless there was privity between the Bureau and the applicant or an assignment or other conveyance of the Bureau's rights to the applicant). *Accord Colorado River Water Conservation District v. Rocky Mountain Power Co.*, 174 Colo. 309, 486 P.2d 438 (1971), *cert. denied*, 405 U.S. 996, 92 S.Ct. 1245, 31 L.Ed.2d 465 (1972).

Finally, Amity's single application of an undefined quantity of water from the reservoir for irrigation purposes sometime between November 1933 and the destruction of the dam in 1935 is, again, not sufficient to establish intent to appropriate. For this reason, such an action does not constitute the "first step" necessary to establish a conditional decree. *Lionelle*, 676 P.2d at 1168.

Accordingly, we reverse the decree of the district court and remand with directions to dismiss the application.

---

**8.** The record does not contain any documents or other evidence indicating the WPA's intentions in building the dam.

**9.** On the facts in the record, it is unlikely that even the WPA could satisfy the necessary requirements for the requested conditional de-

cree. In studying and then constructing the dam to provide flood control benefits to Holly, and perhaps for other flood control purposes, the WPA did not manifest an intent to appropriate water for the beneficial use of irrigation at any time.