**CITY OF ASPEN and Board of County Commissioners of Pitkin County, Applicants-Appellants,**

**v.**

**COLORADO RIVER WATER CONSERVATION DISTRICT, Objector-Appellee,**

**and**

**United States of America and Exxon Company, U.S.A., Appearants-Appellees.**

**No. 82SA478.**

Supreme Court of Colorado, En Banc.

Jan. 21, 1985.

Rehearing Denied Feb. 11, 1985.

Musick and Cope, John D. Musick, Jr., Robert F. Wigington, Boulder, Paul Taddune, City Atty., City of Aspen, Wesley A. Light, County Atty., Pitkin County, Aspen, for applicants-appellants.

Donald H. Hamburg, Glenwood Springs, for objector-appellee.

Carol E. Dinkins, Asst. U.S. Atty. Gen., Robert L. Klarquist, Thomas H. Pacheco, Attys., U.S. Dept. of Justice, Washington, D.C., John R. Hill, Jr., Atty., U.S. Dept. of Justice, Denver, for appearant-appellee United States of America.

Holme Roberts & Owen, Glenn E. Porzak, Denver, for appearant-appellee Exxon Company, U.S.A.

LOHR, Justice.

The City of Aspen and the Board of County Commissioners of Pitkin County ("Aspen" and "Pitkin County," or "Applicants") appeal from a judgment of the water judge for Water Division 5 dismissing their application for a decree of a conditional water storage right. We reverse the judgment and remand for further proceedings.

I.

We summarize the facts as stipulated by the parties, found by the water judge, or otherwise established by the record.

Aspen and Pitkin County filed a joint application on December 31, 1980, for a conditional decree of a right to store 102,-400 acre feet of water in a refill of Ruedi Reservoir, the water to be taken from the Fryingpan River and its tributaries. The proposed uses of the water included hydropower, fish culture, recreation and other beneficial uses. Ruedi Reservoir is an existing reservoir with a capacity of approximately 102,400 acre feet located on the Fryingpan River in western Colorado. Ruedi Dam, which forms the reservoir, was constructed by the United States Bureau of Reclamation as a component of the Fryingpan-Arkansas Project, and storage was initiated in 1968. The dam and reservoir continue to be owned by the United States and are administered by the Water and Power Resources Service (WPRS), a part of the United States Department of the Interior.

The Colorado River Water Conservation District filed a statement of opposition to the application. The United States of America and Exxon Company, U.S.A. entered appearances before the water judge.

Based upon a stipulation of facts by the parties, the water judge found that the applicants had the intent to appropriate water as set forth in their application and that water was available in the Fryingpan River for appropriation and refill of Ruedi Reservoir.[1] On the basis of that same stipulation, the trial court also found the following facts:

c. The applicants performed the following acts upon which the date of appropriation might be based:

---

1. Neither the application nor the rest of the record provides any details of the applicants' project such as when and in what manner the refill will occur, how and when the water will be put to use and the relation of the proposed refill to the present fill operation.

(1) Notice of intent to file an application for preliminary permit on Project No. 3225 (Ruedi Dam and reservoir) dated September 30, 1980, and filed with the United States Federal Energy Regulatory Commission (FERC) on October 2, 1980;

(2) Application for a preliminary permit on Project No. 3225, dated and filed with the FERC on October 23 and 24, 1980, respectively; the notice of the pendency of the application was published in the Federal Register January 12, 1981 and in the Aspen Times December 25, 1980;

(3) Application for water right in Case No. 80CW565 filed in Water Division No. 5 on December 30, 1980.

d. The parties have performed additional acts leading up to [these three findings] which are represented by Applicant's Exhibits I, J, K, HH, [and] JJ.

The applicants' exhibits representing the "additional acts" referred to by the court consist of copies of correspondence and other information sent by the WPRS to the applicants concerning the present and historical operation of the reservoir (exhibits I, J and K),[2] minutes of certain joint public meetings of the Pitkin County Commissioners and the Aspen City Council from July 28, 1980, through January 26, 1981 (exhibit HH),[3] and a copy of a letter from an attorney for the applicants to a citizen of Pitkin County dated November 4, 1980, accompanied by various written materials that had been submitted to the City Council at these public meetings (exhibit JJ). These materials contain discussions of hydropower development at Ruedi Dam as well as the projected regional needs for power and water and the possible impact of Ruedi Dam water and power operations on the city and the county.

The court found, finally, that the applicants had not performed any surveys, construction, or other work at the site of Ruedi Dam and Reservoir. It based this finding upon evidence in the record, including admissions by the applicants during oral argument.

Upon the basis of the stipulated and found facts, the parties' oral arguments on questions of law,[4] and a conclusion that

---

**2.** Exhibit I consists of a letter and attached data from the Regional Director of the WPRS to an attorney for the applicants and was dated July 24, 1980. The letter reflects that the Secretary-Engineer of the Colorado River Water Conservation District, among others, received a copy of this correspondence. Exhibit J also consists of a letter and attached data, this time from the Regional Supervisor of Water and Land Operations for WPRS to another attorney for the applicants. This correspondence was dated December 24, 1980. This letter does not reflect that copies were sent to anyone but the Colorado Water Conservation Board. Exhibit K appears to be simply a copy of a WPRS graph displaying historical "pool levels" of Ruedi Reservoir.

**3.** According to these minutes, the joint meetings of the City Council and the County Commissioners were held as a portion of and during the regular meetings of the Aspen City Council. The minutes reflect various discussions among public officials, staff and legal counsel (and, rarely, others) on a variety of concerns involving Ruedi Dam and Reservoir, primarily including the conflict with other public and private entities over the present operation of the dam and the sale and utilization of the present fill; the possibility that the city, the county, or both might purchase the reservoir from the United States or, at least, participate in the repayment obligation in return for some control over reservoir operation; and the possibility of hydropower development at Ruedi Dam, centering around FERC applications by various parties leading eventually to the competing application jointly filed with FERC by the city and the county. The minutes reflect only one discussion of the possibility that the city and the county might appropriate water from the Fryingpan River for a refill of Ruedi Reservoir. This discussion came on January 12, 1981, after the application for the conditional decree had been filed.

**4.** The questions of law submitted to the water judge by the parties along with the stipulation of facts were as follows:

Issue A in the pretrial order is stated as follows: Have Applicants taken the necessary "first step" towards initiating an appropriation of the water available for refilling Ruedi Reservoir? The stipulations with regard to this issue are set forth below:

a. The parties acknowledge that there is a two-pronged test to determine if a "first step" exists. The parties recognize that one prong of the test is an intent to appropriate water. The parties agree that Applicants had and still

prior decisions of this court require that "in order to obtain a conditional decree for a water right there must be an intent to appropriate water and an open physical act on the land sufficient to constitute notice to third parties of the intent to apply water to beneficial use," the water judge concluded that Aspen and Pitkin County were not entitled to a conditional decree due to a failure by the applicants to perform any open physical act on the land. The water judge therefore dismissed the application. Aspen and Pitkin County appeal from this judgment of dismissal.

## II.

▇▇▇ Section 37–92–103(6), 15 C.R.S. (1973), defines a conditional water right as "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." Conditional water right decrees are designed to establish that the "first step" toward the appropriation of a certain amount of water has been taken and to recognize the relation back of the ultimate appropriation to the date of that first step. *See* § 37–92–305(1), 15 C.R.S. (1973); *Lionelle v. Southeastern Colorado Water Conservancy District,* 676 P.2d 1162, 1168 (Colo.1984) (*Lionelle*). The burden of proving that the first step has been completed on a particular date is on the applicant for the conditional decree. § 37–92–304(3), 15 C.R.S. (1973 and 1984 Supp.). The determination whether the requisite first step has been taken must be made on an *ad hoc* basis, taking into account the particular facts in each case. *Lionelle,* 676 P.2d at 1168.

have an intent to appropriate water, as set forth in the application.

b. The parties disagree as to the second prong of the test to determine if a "first step" exists. Applicants state that the second prong of the test is that the appropriator must give notice of the intent to apply water to beneficial use.

c. The Objector believes that the second prong of the test is "an open physical act on the land sufficient to constitute notice to third parties of the intent to apply water to beneficial uses."

We have held that the "first step" required for the initiation of an appropriation and relation back of a priority date must consist of the concurrence of the intent to appropriate water for application to beneficial use with an overt manifestation of that intent through physical acts sufficient to constitute notice to third parties. *Lionelle,* 676 P.2d at 1168; *Colorado River Water Conservation District v. Vidler Tunnel Water Co.,* 197 Colo. 413, 416, 594 P.2d 566, 568 (1979); *Fruitland Irrigation Co. v. Kruemling,* 62 Colo. 160, 164–65, 162 P. 161, 163 (1916) (*Fruitland*). The parties' dispute centers around whether those "physical acts" must be performed, at least in part, "on the land." Aspen and Pitkin County concede that they performed no physical acts "on the land," i.e., at the site of Ruedi Dam and Reservoir.

Over the span of a century, this court has issued numerous opinions concerning conditional water rights, from *Sieber v. Frink,* 7 Colo. 148, 2 P. 901 (1884), to *Fort Lyon Canal Co. v. Amity Mutual Irrigation Co.,* 688 P.2d 1110 (1984). Out of those many opinions, only four have included an explicit "on the land" statement in describing the "first step" requirements: *Twin Lakes Reservoir & Canal Co. v. City of Aspen,* 192 Colo. 209, 214–15, 557 P.2d 825, 829 (1976); *Bunger v. Uncompahgre Valley Water Users Association,* 192 Colo. 159, 166–67, 557 P.2d 389, 393–94 (1976); *Central Colorado Water Conservancy District v. City & County of Denver,* 189 Colo. 272, 275, 539 P.2d 1270, 1272 (1975) (*Central Colorado*); and *Elk-Rifle Water Co. v. Templeton,* 173 Colo. 438, 445, 484 P.2d 1211, 1214 (1971) (*Elk-Rifle*).

d. The parties disagree on four points regarding the demonstration of intent to appropriate. First, the parties disagree whether there must be a physical demonstration on the land of the intent to appropriate. Secondly, the parties disagree as to what constitutes "physical" demonstration of intent to appropriate. Thirdly, the parties disagree that an open physical demonstration of intent occurred. Fourthly, the parties disagree that any demonstration of intent gave notice to third parties of the pendency of the appropriation.

The first decisions by this court articulating the requirements for a decree relating an appropriation back to the date of the "first step" did not include an express statement that overt acts constituting notice of the requisite intent must be performed on the land. *See Fruitland; Larimer County Reservoir Co. v. People ex rel. Luthe,* 8 Colo. 614, 616–17, 9 P. 794, 796 (1886); *Sieber v. Frink,* 7 Colo. 148, 153, 2 P. 901, 903 (1884). Any conclusions to be derived from the absence of such a statement must be tempered by the realization that not one of these cases involved an issue as to whether overt acts *not* performed on the land might be sufficient to satisfy the requirements for a conditional decree. In fact, as will be shown below, this court has never been presented squarely with an issue concerning overt acts not performed on the land in a case that did not also involve failure to satisfy other requirements for establishing a conditional water right.

*Fruitland* is instructive in its analysis of the purposes and content of the "first step" test. In *Fruitland,* Emmet and George Gould visited the site of what was to become the Onion Valley Reservoir in the spring of 1900. The Goulds examined the site, paid a man $5.00 to perform "token" work on the land in the form of moving earth and rock, and made known to a local resident their intent to acquire his land for use as a reservoir site. The land was purchased by the Goulds later in 1900. Not until May of 1901 did the Goulds direct a "detailed survey of the reservoir and ditches." The survey was begun on May 17, 1901, and the resulting maps were filed with the state engineer. 62 Colo. at 162–63, 162 P. at 162.

This court affirmed the trial court's decree recognizing an appropriation date of May 17, 1901, for the eventually-constructed Onion Valley Reservoir, despite the applicant's claim of an earlier date. The requirements for a conditional decree, and the purposes underlying these requirements, were analyzed as follows:

Certainly the first step demanded by the rule is nothing short of an open and notorious physical demonstration, conclusively indicating a fixed purpose to diligently pursue and, within a reasonable time, ultimately acquire a right to the use of water, and as its primary function is to give notice to those subsequently desiring to initiate similar rights, it must necessarily be of such a character that they may fairly be said to be thereby charged with at least such notice as would reasonably be calculated to put them on inquiry of the prospective extent of the proposed use and consequent demand upon the water supply involved. [Citation omitted]. The $5.00 worth of work done on the reservoir site in the form of moving earth and rock late in the spring or early in the summer of 1900, admittedly a mere token, did not, considered with other facts disclosed, meet the requirement. Neither did the bare fact of purchase of lands a little later do so. The matter does not rest upon the intent of the claimant, but rather upon such outward, physical acts and manifestations in pursuance of such intent as may be deemed sufficient to constitute notice to all who may come. This doctrine is for the benefit of the claimant, and any tendency toward its abuse should be carefully scrutinized, lest injury result to the public in general in the exercise of the inherent right to divert and appropriate water to beneficial uses, in the light of conditions apparently existing at the time, free from the burden of anticipating the purposes and claims of others, not sufficiently indicated by such physical acts as would charge ordinary intelligence with the nature, purpose and effect thereof.

62 Colo. at 165–66, 162 P. at 163.

In *Fruitland,* this court was not concerned with the distinction between overt acts performed on the land and those performed elsewhere. Rather, we held and emphasized that the required overt acts must be of such a character as to manifest the necessary intent, to demonstrate that a substantial step toward the application of

water to beneficial use has been taken, and, most importantly, to constitute notice to interested persons of the proposed demand upon the water supply.[5] *See also Colorado River Water Conservation District v. Rocky Mountain Power Co.,* 174 Colo. 309, 314–17, 486 P.2d 438, 441–42 (1971); *Four Counties Water Users Association v. Colorado River Water Conservation District,* 161 Colo. 416, 421–23, 425 P.2d 259, 261–62 (1967); *City & County of Denver v. Northern Colorado Water Conservancy District,* 130 Colo. 375, 276 P.2d 992 (1954).

Up to and through the first years of the 1970s, the requirements for initiating a conditional water right, as articulated by this court, did not include a statement that overt acts must be performed on the land.[6] Nor, during this early period, was the court presented with a dispute concerning the necessity for work to be performed on the land in order to initiate a conditional water right. Listed in chronological order, *see Holbrook Irrigation District v. Fort Lyon Canal Co.,* 84 Colo. 174, 269 P. 574 (1928); *Taussig v. Moffat Tunnel Water & Development Co.,* 106 Colo. 384, 106 P.2d 363 (1940); *Denver v. Northern Colorado Water Conservancy District,* 130 Colo. 375, 276 P.2d 992 (1954); *Metropolitan Suburban Water Users Association v. Colorado River Water Conservation District,* 148 Colo. 173, 365 P.2d 273 (1961); *Four Counties Water Users Association v. Colorado River Water Conservation District,* 159 Colo. 499, 414 P.2d 469 (1966); *Four Counties Water Users Association v. Colorado River Water Conservation District,* 161 Colo. 416, 425 P.2d 259 (1967); *Colorado River Water Conservation District v.* *Rocky Mountain Power Co.,* 174 Colo. 309, 486 P.2d 438 (1971).

Although this court began discussing the relation-back doctrine in the 1880s, it was not until 1971 that the "on the land" language was added to the conditional decree test by *Elk-Rifle,*[7] a decision where such a refinement was not necessary. *Elk-Rifle* involved a contest as to priority dates concerning water to be appropriated from Main Elk Creek in Garfield County. A crucial issue in *Elk-Rifle* was whether the overt acts of the applicant (preliminary surveying and engineering work) could precede formation of the intent to appropriate (a decision by officials of the applicant, Mobil Oil Co., to undertake the project as outlined by the engineer). This court held that the overt acts could come before the intent, stating simply that

> [w]hat is required is that at some point in time the two requirements—the open physical demonstration and the requisite intent to appropriate—coexist, with the priority date to be set not earlier than the date on which both elements are present.

173 Colo. at 446, 484 P.2d at 1215.

*Elk-Rifle* presented no issue as to whether acts not performed on the land would be sufficient to support a conditional decree, since the engineer's activities indisputably took place on the land. The applicant was not attempting to rely on acts not performed on the land to the exclusion of other acts. Yet, in *Elk-Rifle* we suggested, by simply repeating the contention of one of the parties, that a valid "first step" must "consist of open work 'on the land' in order that notice can be given to others of

---

**5.** Although we commonly refer to plural "acts" when stating and explaining the action necessary to satisfy the "first step" requirement, a single act could prove sufficient if it satisfies the purposes of manifesting the necessary intent, demonstrating that a substantial step has been taken, and giving notice to interested persons.

**6.** The characterization of the required acts as "physical" carried no connotation concerning where the acts must take place.

**7.** *Elk-Rifle* cites *Sieber v. Frink, Larimer County Reservoir Co. v. People ex rel. Luthe,* and *Fruitland Irrigation Co. v. Kruemling* as support for its declaration that the open physical demonstration necessary as part of the "first step" must consist of work performed on the land. 173 Colo. at 445, 484 P.2d at 1214–15. However, not one of these decisions involved an issue of whether "on the land" acts were always necessary nor did any of them add an "on the land" requirement to the language of the test.

the intention of the appropriators." 173 Colo. at 445, 484 P.2d at 1214.

Then, in *Central Colorado,* we characterized our suggestion in *Elk-Rifle* as a holding. In *Central Colorado,* the Central Colorado Water Conservancy District claimed an entitlement to a decree of a conditional water right for a transmountain diversion and storage project. Central Colorado did not claim as its "first step" the commencement of field survey work performed by the Bureau of Reclamation on this project. Instead, the District simply incorporated the Bureau of Reclamation's work into its own activities in preparing plans for the project and filing the application for a conditional decree, claiming for a "first step" priority date the date of filing. Central Colorado itself performed no acts on the land. 189 Colo. at 274–75, 539 P.2d at 1271–72. We held that Central Colorado was not entitled to a conditional decree because of a lack of open work on the land. 189 Colo. at 275, 539 P.2d at 1272. Open work on the land was deemed necessary in order that notice be given to others of the intention of the appropriator. *Id.*

While the "on the land" requirement was explicitly stated and was central to our decision in *Central Colorado,* this court was neither following a conclusive precedent nor presented with a compelling set of facts where the acts performed by the applicant, though not on the land, might have been substantial enough to provide notice, manifest intent, and demonstrate a serious step toward application of water to beneficial use. Even if the overt acts had not been required to be performed on the land, the acts performed by Central Colorado would not have been sufficient to satisfy the underlying purposes and requirements for a conditional decree as they were simply not substantial or overt and provided no real notice. *Central Colorado* was followed by *Bunger v. Uncompahgre Valley Water Users Association,* 192 Colo. at 166–68, 557 P.2d at 393–95. *(Bunger). Bunger* is nearly identical to *Central Colorado* in facts, result, rationale and analysis with respect to the present issue and the pur-

poses underlying the requirements for a conditional decree.

The final decision of the four, *Twin Lakes Reservoir & Canal Co. v. City of Aspen,* involved facts similar to those in *Elk-Rifle* and yields to the same analysis as *Elk-Rifle.* As in *Elk-Rifle, Twin Lakes* included an unnecessary statement of an "on the land" requirement. 192 Colo. at 214–15, 557 P.2d at 829. The "on the land" language has disappeared from recent articulations of the conditional decree test. *See Fort Lyon Canal Co. v. Amity Mutual Irrigation Co.,* 688 P.2d at 1113–114; *Lionelle,* 676 P.2d at 1168; *Rocky Mountain Power Co. v. Colorado River Water Conservation District,* 646 P.2d 383, 387 (Colo.1982); *Harvey Land & Cattle Co. v. Southeastern Water Conservancy District,* 631 P.2d 1111, 1113 (Colo.1981); *Colorado River Water Conservation District v. Vidler Tunnel Water Co.,* 197 Colo. 413, 416, 594 P.2d 566, 568 (1979).

■ The fact that acts take place "on the land" does not invest them with magical significance. Rather, in determining the sufficiency of actions by the applicant to satisfy the overt acts requirement of the first step test, the critical inquiry is whether the acts were sufficient to accomplish the purposes for which that requirement has been established. Thus, the absence of acts performed on the land should not be fatal to an application for a conditional decree when the applicant has performed overt acts sufficient to manifest the requisite intent, to demonstrate that a substantial step has been taken toward the application of water to beneficial use, and to constitute notice to others of the proposed demand upon the water supply. *See Fruitland,* 62 Colo. at 165–67, 162 P. at 163. Work performed on the land may be particularly persuasive in satisfying the purposes that the overt acts requirement is designed to accomplish. However, performing work on the land is not indispensable to the initiation of a conditional water right. To the extent that *Elk-Rifle* and its progeny held that acts must be performed on the land in every case to support a conditional

decree, we believe they were unnecessarily and wrongly decided and will not follow them.

### III.

In the findings supporting the denial of the application, the water judge noted that the only issue involved was whether the overt acts supporting a conditional decree must be performed on the land. Then, after reviewing prior decisions of this court and reaching an affirmative answer to this question, the water judge concluded that the applicants were not entitled to a conditional decree due to their failure to perform the necessary overt acts on the land. Thus, the water judge's subsequent conclusions—that the filing of the notice and the application with the FERC and the filing of the application for adjudication of water rights by Aspen and Pitkin County were not sufficient to constitute the necessary first step establishing a conditional water right—cannot be said to reflect a view by the water judge that these acts would not be sufficient to satisfy the conditional decree requirements *absent* the "on the land" restriction.

Furthermore, the parties entered into a stipulation as to the relevant facts and concentrated their efforts, both below and before this court, on arguing the necessity for the performance of work "on the land." Neither the water judge nor this court has been favored with adequate arguments concerning the sufficiency of the acts actually performed by Aspen and Pitkin County to manifest the necessary intent to apply water to beneficial use, to demonstrate that a substantial step has been taken toward the application of water to beneficial use, or to constitute proper notice to interested persons. In addition, the record may be insufficient for review by this court at this time in view of our elaboration of the requirements and reasons for the "first step" test. For us to make a determination as to the validity of the applicants' claimed conditional water right in this opinion, without the benefit of focused argument and upon the basis of a possibly inadequate record, would not promote a just resolution of this litigation.

Therefore, we remand this case to the water judge with instructions to determine whether the applicants have satisfied the requirements for a decree of a conditional water right as outlined in Part II of this opinion and in *City & County of Denver v. Colorado River Water Conservation District,* 696 P.2d 730 (decided this day). The water judge has leave to reopen the proceedings for the presentation of further evidence if he deems it necessary in order to achieve full compliance with the views expressed in this opinion.

Judgment reversed and cause remanded.