Concerning the Application for Water Rights of the City and County of Broomfield in Adams, Broomfield, Boulder, and Weld Counties.

CENTENNIAL WATER AND SANITATION DISTRICT and City of Boulder, Opposers–Appellants/Cross–Appellees

v.

CITY AND COUNTY OF BROOMFIELD, Applicant–Appellee/Cross–Appellant

and

City of Aurora, Brighton Ditch Company, City of Englewood, Farmers Reservoir and Irrigation Company, City of Longmont, City of Louisville, New Consolidated Lower Boulder Reservoir and Ditch Company, Northern Colorado Water Conservancy District, Platteville Irri-

gation and Milling Company, Public Service Company of Colorado, d/b/a Xcel Energy, South Adams County Water and Sanitation District, City of Thornton, and City of Westminster, Opposers–Appellees/Cross–Appellees

and

James R. Hall, Division Engineer for Water Division No. 1, Appellee Pursuant to C.A.R. 1(e).

No. 09SA213.

Supreme Court of Colorado, En Banc.

June 20, 2011.

As Modified on Denial of Rehearing Aug. 1, 2011.

678

Buchanan and Sperling, P.C., Veronica A. Sperling, Esq., Eric R. Potyondy, Arvada, Colorado, Attorneys for Opposers–Appellants/Cross–Appellees Centennial Water and Sanitation District and City of Boulder.

Harvey W. Curtis & Associates, Harvey W. Curtis, Esq., David L. Kueter, Esq., Sheela S. Stack, Esq., Englewood, Colorado, Attorneys for Applicant–Appellee/Cross–Appellant City and County of Broomfield.

Hill & Robbins, P.C., Dennis M. Montgomery, Jennifer H. Hunt, Denver, Colorado, Attorneys for Amicus Curiae The City of Colorado Springs.

Trout, Raley, Montano, Witwer & Freeman, P.C., Peter D. Nichols, Denver, Colorado, Attorneys for Amici Curiae Lower Arkansas Valley Water Conservancy District and Lower Arkansas Valley Super Ditch Company, Inc.

Burns, Figa, & Will, P.C., Stephen H. Leonhardt, Greenwood Village, Colorado, Attorneys for Amici Curiae Southeastern Colorado Water Conservancy District, Coors Brewing Company, and Castle Pines Metropolitan District.

Duncan Ostrander & Dingess, P.C., Austin Hamre, Denver, Colorado, Attorneys for Amicus Curiae Castle Pines North Metropolitan District.

Entry of Appearance with no briefs filed by the City of Aurora.

No appearance by or on behalf of Brighton Ditch Company, City of Englewood, Farmers Reservoir and Irrigation Company, City of Longmont, City of Louisville, New Consolidated Lower Boulder Reservoir and Ditch Company, Northern Colorado Water Conservancy District, Platteville Irrigation and Milling Company, Public Service Company of Colorado, d/b/a Xcel Energy, South Adams County Water and Sanitation District, City of Thornton, and City of Westminster.

Justice EID delivered the Opinion of the Court.

The City and County of Broomfield ("Broomfield") filed an application for conditional appropriative rights of exchange in the district court for Water Division No. 1 for two claimed exchange reaches on the South Platte River and Big Dry Creek, a tributary of the South Platte River. The conditional appropriative rights of exchange included claims to seventeen sources of substitute water supply: nine that Broomfield owns or controls and eight that Broomfield admittedly does not own or control. Centennial Water and Sanitation District ("Centennial") and the City of Boulder ("Boulder") (together "Opposers"), among others, filed Statements of Opposition.

Before the water court, Opposers argued that Broomfield's Application for conditional appropriative rights of exchange should be treated as a proposed augmentation plan, rather than as an application for a conditional water right, and that therefore Broomfield would have to own or control each proposed substitute source of water supply. The water court disagreed, and instead treated Broomfield's Application as an application for a conditional water right subject to the first step requirement and the can and will test. Applying those doctrines as they have developed in the context of government entities to each proposed substitute source, the water court found that Broomfield had met its burden with regard to the nine sources of substitute supply that it did own or control; with regard to the proposed sources that it admittedly did not own or control, the court found that Broomfield had met its burden as to two substitute sources, and had failed to meet its burden for the remaining six. Accordingly, the water court decreed Broomfield's conditional appropriative rights of exchange based on the nine sources of substitute supply that it does own or control, and the two sources of substitute supply it does not own or control but has demonstrated a first step to acquiring and can and will acquire.

Opposers appealed on the ground that the water court erred in failing to treat Broomfield's Application as a proposed augmentation plan. Broomfield cross-appealed, arguing that the water court erred in (1) failing to approve six of the eight sources of substitute supply that it admittedly does not own or control, and (2) applying the can and will test and the first step requirement to each of its proposed sources of substitute supply.

We now affirm the decree of the water court. We hold that an application for conditional appropriative rights of exchange should be treated as an application for a conditional water right, rather than as a proposed augmentation plan. As an application for a conditional water right, Broomfield's Application for conditional appropriative rights of exchange is subject to the can and will test and the first step requirement as those doctrines have been developed in the context of government entities. Accordingly, Broomfield need not own or control all sources of substitute water supply at the time the decree is entered, but it must demonstrate that it has taken the first step to acquiring and can and will acquire the proposed sources of substitute supply. We also hold that this analysis is to be applied source-by-source, and find that the water court properly concluded that Broomfield

had met its burden with regard to two of the eight proposed sources of substitute supply that it does not own or control. We therefore affirm the water court's decree of conditional appropriative rights of exchange based on the nine sources Broomfield owns or controls and two of the eight proposed sources that it does not own or control.

## I.

The City and County of Broomfield filed its Application for Conditional Appropriative Rights of Exchange and for Conditional Water Rights in the water court on December 20, 2004. As amended, the Application requests judicial confirmation of conditional appropriative rights of exchange based on nine sources of substitute supply that Broomfield currently owns or controls and eight sources of substitute supply that it admittedly does not own or control.[1]

Opposers Centennial and Boulder, among others, filed Statements of Opposition. At trial, Opposers argued that an application for conditional appropriative rights of exchange is analogous to an augmentation plan, and that therefore an applicant must own or control all substitute supplies claimed at the time the court enters its decree to ensure that the exchange does not injure vested water interests. The water court disagreed, holding that a conditional appropriative right of exchange is a conditional water right and that therefore the requirements of a conditional water right apply. As an applicant for a conditional water right, the court held that Broomfield had the burden of demonstrating

both "a nonspeculative intent to put the water to beneficial use and a substantial probability that its intended appropriation will reach fruition.'" (Citing *Pagosa Area Water & Sanitation Dist. v. Trout Unlimited*, 170 P.3d 307, 317 (Colo.2007).) The court continued, "a governmental applicant for a conditional appropriative right of exchange need not own all of its proposed substitute supplies at the time [a] decree is entered." The court concluded that a governmental applicant is entitled to a decree confirming conditional appropriative rights of exchange using substitute supplies not owned or controlled if "it establishe[s] that it has completed a first step towards and can and will obtain the claimed substitute supplies it does not own or control."

The water court then applied this test to Broomfield's Application. First, the court addressed whether Broomfield met its burden of satisfying the elements for a conditional water right, including the can and will test, for substitute supplies that it owns or controls. The court found that Broomfield had taken the step of acquiring the water and, additionally, had demonstrated that it can and will complete the tasks necessary to fulfill those exchange appropriations.[2] Furthermore, the court found that Broomfield had also demonstrated that its intent in obtaining a decree for the exchanges using substitute supplies it controls is not speculative because the application would fulfill the reasonably anticipated water requirements based on projections of future growth.[3]

---

1. The eight sources Broomfield admittedly does not own or control are: (1) additional shares in the Lupton Bottom Ditch Company, (2) additional shares in the Lupton Meadows Ditch Company, (3) additional shares in the Brighton Ditch Company, (4) a proposed source of effluent from either Aurora effluent and/or Arvada effluent and/or additional Consolidated Mutual Water Company effluent released to the South Platte River, (5) water rights in the Meadow Island No. 1 Ditch, (6) water rights in the Meadow Island No. 2 Ditch/Beeman Ditch, (7) water rights and interest in the Western Mutual Ditch Company/Hewes & Cook Ditch, and (8) shares in the Platteville Ditch/Platteville Irrigating and Milling Company.

2. Specifically, the water court pointed to evidence of a directive from the City Manager to

take all necessary steps to complete the appropriations; the placement of notice signs at the exchange-from points and the exchange-to points; and the presentation of evidence that certain facility developments were technically feasible, including completion of the Heit Pit and its inlet and outlet works, extension of the reuse system to the Northwest Quadrant of the service area, and construction of augmentation stations.

3. Specific evidence for this governmental requirement included testimony from David Allen, Broomfield's Deputy Director of Public Works, that Broomfield required the water in its exchanges for a variety of municipal purposes, including: to serve additional demands within its reuse system, in case of an emergency or severe drought, and as an operational tool to allow

Therefore, the court found that Broomfield's proposed conditional appropriative rights of exchange using substitute supplies it owns or controls met the requirements for a conditional water right.

Next, the court addressed whether Broomfield met its burden of satisfying the elements for a conditional water right, including the can and will test, using substitute supplies it does not yet own or control. The court applied this test to each source of substitute supply and found that Broomfield failed to demonstrate it had taken a first step to acquire six of the eight substitute sources of supply claimed in the conditional appropriative rights of exchange.[4] For those six sources, the water court found that despite evidence of Broomfield's growth and reasonably anticipated water requirements, Broomfield had not identified with any specificity or certainty whether the sources of these six rights were for sale or lease, was not currently engaged in negotiations to obtain the rights, and had not commissioned any reports regarding the economic or engineering feasibility of obtaining these specific rights. Therefore, the court concluded that Broomfield's intent to acquire these sources was speculative.

The water court then found that Broomfield had sufficiently demonstrated a first step to acquiring additional shares with regard to two sources of substitute supply: the Lupton Bottom Ditch Company and effluent from Aurora and/or the Consolidated Mutual Ditch.[5] As to these two proposed sources, the water court found that Broom-

field's intent was not speculative. Broomfield's Deputy Director of Public Works, David Allen, testified at trial that the municipality had engaged in negotiations to obtain additional shares in the Lupton Bottom Ditch Company. Allen also testified that, as to the proposed effluent sources, Broomfield had entered negotiations to obtain additional Aurora effluent and owned a right of first refusal for 500 acre-feet of Consolidated Mutual Water Company effluent. The court found that the fact that Broomfield owns a right of first refusal for 500 acre-feet of Consolidated Mutual effluent established a substantial probability that Broomfield would obtain these rights. The court also noted that Broomfield's proposed twelve-year maximum diligence period—in which it must acquire interests in these rights or the rights are removed as conditional sources of substitute supply from its decree—established that Broomfield was not attempting to decree the water for speculative purposes.

Furthermore, the court found that Broomfield demonstrated that it can and will obtain the substitute supplies. Allen testified that the additional shares in the Lupton Bottom Ditch Company would be utilized in the exchange through the Heit Pit, a facility that Broomfield currently owns and is in the process of expanding. Broomfield's Water Resource Administrator, Daniel Ray Mayo, also testified that Broomfield planned to extend the reuse system and construct augmentations to accommodate the substitute effluent supplies, which he demonstrated to be technically and economically feasible projects.

---

Broomfield to move water around within its system.

4. The proposed substitute sources of supply that Broomfield failed to demonstrate a first step to acquiring are: (1) additional shares in the Lupton Meadows Ditch Company, (2) additional shares in the Brighton Ditch Company, (3) water rights in the Meadow Island No. 1 Ditch, (4) water rights in the Meadow Island No. 2 Ditch/Beeman Ditch, (5) water rights and interests in the Western Mutual Ditch Company/Hewes & Cook Ditch, and (6) shares in the Platteville Ditch/Platteville Irrigating and Milling Company. Additionally, the court found that Broomfield failed to demonstrate completing a first step to acquiring Arvada effluent, listed as one of three possible sources of effluent for the fourth proposed source of substitute supply.

5. The fourth proposed source of substitute supply not owned or controlled by Broomfield but claimed in its Application included three possible sources of effluent: "Aurora effluent and/or Arvada effluent and/or additional Consolidated Mutual Water Company effluent released to the South Platte River." While the court held that Broomfield had not demonstrated completing a first step to acquiring the Arvada effluent, the court held that Broomfield had demonstrated completion of a first step and the can and will test for the other two potential sources: Aurora effluent and/or additional Consolidated Mutual Water Company effluent. Therefore, source four was ultimately included in the court's decree of conditional appropriative rights of exchange.

Accordingly, the water court issued a decree on July 27, 2009, confirming Broomfield's conditional appropriative rights of exchange in additional shares in the Lupton Bottom Ditch Company and Aurora effluent and/or additional Consolidated Mutual effluent.

Opposers appealed to this Court, arguing that the water court erred in ruling that an applicant need not own or control all substitute supplies at the time a decree for conditional appropriative rights of exchange is entered. Broomfield cross-appealed, challenging the water court's denial of six of the eight proposed sources of substitute supply and the applicability, and application of, the first step, anti-speculation, and the can and will standards to individual substitute supplies for conditional appropriative rights of exchange.

More specifically, Opposers argue that an appropriative right of exchange should be treated as an augmentation plan, on the ground that both mechanisms allow water users to divert water when the priority system would otherwise not allow it. Therefore, Opposers continue, similar to the burden of a proponent of an augmentation plan, Broomfield must identify the sources and character of the substitute supplies with certainty to carry its burden of proving that no injury to other water rights will result from the appropriative rights of exchange. In other words, an applicant should be required to demonstrate that it owns or controls substitute supplies, which, with regard to the eight substitute supplies at issue in this case, Broomfield admittedly does not.

Broomfield, in contrast, argues that the water court erred in approving only two of the appropriative rights of exchange instead of all eight. Specifically, Broomfield argues that the water court erred in applying the first step and the can and will tests on a source-by-source, rather than on a project-wide, basis. It contends that, using a proper project-wide focus, it has met the requirements of the first step and the can and will tests for all eight sources of substitute supply.

We now affirm the water court. We hold that an application for a conditional appropriative right of exchange should be treated as an application for a conditional water right, rather than as a proposed augmentation plan. As an application for a conditional water right, Broomfield's Application for conditional appropriative rights of exchange is subject to the can and will test and the first step requirement as those doctrines have been developed in the context of government entities. Accordingly, Broomfield need not own or control all sources of substitute water supply at the time the decree is entered, but it must demonstrate that it has taken the first step to acquiring and can and will acquire the proposed sources of substitute supply. We also hold that this analysis is to be applied source-by-source, and find that the water court properly concluded that Broomfield had met its burden with regard to two of the eight proposed sources of substitute supply that it did not own or control. We therefore affirm the water court's decree of conditional appropriative rights of exchange based on the nine sources Broomfield owns or controls and two of the eight proposed sources that it does not own or control.

## II.

■ First, we address, and ultimately disagree with, the Opposers' argument that Broomfield's Application for conditional appropriative rights of exchange should be treated as an augmentation plan.

■ An application for a conditional appropriative right of exchange should be reviewed under a conditional water right analysis because an exchange is an appropriative right, and not an augmentation plan. Although the elements of an exchange are not defined by statute, statutory language in the Water Right Determination and Administration Act of 1969 recognizes an exchange as an appropriative right. § 37-92-302(1)(a); § 37-92-305(10), C.R.S. (2010). This court has previously recognized the existence and value of an appropriative right of exchange as an independent claim and established four essential elements it must include, namely: a substitute supply above the calling water right; a substitute supply equivalent in amount and of suitable quality to the down-

stream senior appropriator; available natural flow at the point of upstream diversion; and a non-injurious implementation. *Empire Lodge Homeowners' Ass'n v. Moyer,* 39 P.3d 1139, 1155 (Colo.2001); *see also City of Florence v. Bd. of Waterworks,* 793 P.2d 148, 151–52 (Colo.1990).

Under Colorado's statutory scheme, an exchange, conditional or absolute, is distinguished as a separate claim from an augmentation plan. Section 37–92–302(1)(a) lists "approval of a plan for augmentation" and "approval of a proposed or existing exchange of water under section 37–80–120 or 37–83–104" as separate claims for application to a water court. This Court has previously noted that the historical amendments to section 37–92–302(1)(a) evidence a clear intent to distinguish exchanges as a separate claim. *City of Florence,* 793 P.2d at 151–52; *see also Empire Lodge,* 39 P.3d at 1155.

■ This statutory distinction is supported by the practical differences between an exchange and an augmentation plan. An augmentation plan operates to replace depletions (often from well pumping) with substitute water supply in an amount necessary to prevent injury to other water rights. *See Simpson v. Bijou Irrigation Co.,* 69 P.3d 50, 60–61 (Colo.2003). In contrast, an appropriative right of exchange allows a strict one-to-one diversion of upstream water in exchange for providing continuity with a source of substitute supply at a point downstream, in an amount and of a quality suitable to what would have been available to water users in that location. *Empire Lodge,* 39 P.3d at 1155. The diversions at the upstream point take on the character of the water right used as a source of downstream substitute supply. *Id.* Therefore, an operating exchange will reduce stream flow only in the exchange reach—i.e., the segment of river between the downstream source of substitute supply and the upstream point of diversion—and will only create a limited potential for injury.

■ The clearest difference between augmentation plans and appropriative rights of exchange is how each relates to the priority system. Augmentation plans operate outside the priority system, allowing out-of-priority depletions (including delayed depletions

by wells) to be replaced by substitute supply. *See id.* (citing *City of Florence,* 793 P.2d at 156 (Erickson, J., concurring)). In contrast, an appropriative right of exchange operates within the priority system. *Id.* The operator of an exchange instantaneously replaces diversions with substitute supply downstream and, for this diversion and replacement, may obtain a conditional or absolute exchange decree with its own priority date. § 37–80–120(4), C.R.S. (2010) ("A practice of substitution or exchange pursuant to law may constitute an appropriative right and may be adjudicated or otherwise evidenced as any other right of appropriation."); *Empire Lodge,* 39 P.3d at 1155 ("The operator of an exchange may obtain a conditional or absolute decree with a priority for the exchange."). Therefore, it is appropriate to analyze a conditional appropriative right of exchange in terms of a conditional water right rather than as an augmentation plan.

■ Finally, we note that defining a conditional appropriative right of exchange in terms of a conditional water right supports Colorado water law's general principle of maximum utilization by making water available for as many decreed uses as there is available supply. *See* § 37–92–102(1)(a), C.R.S. (2010); *see also Pagosa,* 170 P.3d at 313. A conditional water right is "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), C.R.S. (2010). In other words, while a water right generally arises only by actually placing the water to beneficial use, a conditional water right allows the appropriation to relate back to the time when the appropriator completed the first step towards appropriation, if the conditional appropriation is diligently pursued to completion. *Vought v. Stucker Mesa Domestic Pipeline Co.,* 76 P.3d 906, 911 (Colo.2003). Therefore, the system for decreeing conditional appropriations, including conditional appropriative rights of exchange, encourages maximum utilization by antedating the priority of a water right to the extent that actual beneficial use subsequently occurs. § 37–92–103(6); *Pagosa,* 170 P.3d at 314; *Dallas Creek Water Co. v. Huey,* 933 P.2d 27, 35 (Colo.1997).

In sum, we disagree with the Opposers' argument that an application for conditional appropriative rights of exchange should be treated as an augmentation plan, and instead find that it should be treated as an application for a conditional appropriative water right.[6] We therefore find that the water court appropriately treated Broomfield's Application as an application for conditional appropriative rights.

## III.

Given our conclusion that the water court properly treated Broomfield's Application for conditional appropriative rights of exchange as an application for conditional appropriative rights, we next consider Broomfield's argument that the water court erred by applying standards applicable to conditional rights—namely, the first step requirement and the can and will test—to its sources of substitute supply on a source-by-source basis.

■■■■ Under a conditional appropriative right analysis, an appropriator may obtain a conditional right to use a portion of the public's water resource with a priority date if it establishes intent to make a non-speculative appropriation. *Pagosa*, 170 P.3d at 314. Once the appropriator makes actual beneficial use of the water resource, the appropriation right vests with the predated priority. *Id.; see also Empire Lodge*, 39 P.3d at 1147. To obtain a conditional water right, an applicant must demonstrate that it has taken a first step toward appropriation of a certain amount of water, that its intent to appropriate is not based upon the speculative sale or transfer of the appropriative right, and that there is a substantial probability that the applicant can and will complete the appropriation with diligence. *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 31 (Colo. 1996). To satisfy the first step, an applicant must establish an intent to appropriate water for beneficial use. *City of Aspen v. Colo. River Water Conservation Dist.*, 696 P.2d 758, 761 (Colo.1985). Pursuant to the anti-speculation doctrine, the applicant's intent

cannot be based upon the subsequent speculative sale or transfer of appropriative rights. *City of Thornton*, 926 P.2d at 36. However, governmental entities are afforded greater flexibility in demonstrating the requisite intent to the necessity to plan for future water needs and therefore may be decreed conditional water rights based solely on projected future needs and without firm contractual commitments or agency relationships. *Id.* at 37–39.

■■■ Broomfield argues that these requirements should be applied to its exchange plan as a whole, and that the appropriate inquiry is whether it has demonstrated that it has taken a first step toward implementing its entire plan and can and will complete it in a reasonable time. Under this standard, Broomfield argues, the fact that it has taken concrete steps with regard to only two sources of substitute supply does not prevent a finding that the overall plan should be approved. More specifically, Broomfield argues that after the water court found that the municipality had demonstrated taking a non-speculative, first step to acquiring and can and will acquire the conditional appropriative rights of exchange based on substitute supplies currently owned or controlled, the analysis should have ceased. Therefore, Broomfield argues, the water court erred in treating each proposed source of substitute supply as if it were a separate conditional water right, individually subject to the first step and can and will standards. We disagree, and find that the water court appropriately applied a source-by-source analysis.

■■■ If an applicant is claiming various substitute sources of supply for a proposed plan of conditional appropriative rights of exchange, an analysis of each individual substitute source is necessary to allow a water court to identify the specific risk of injury. As this Court has previously held, government entities enjoy greater flexibility in satisfying the intent burden required of applicants for conditional appropriative rights. *Pagosa*, 170 P.3d at 314–15; *City of Thornton*, 926 P.2d at 36–40. However, the exception "does not completely immunize

---

6. Because we decline the Opposers' invitation to treat the application in this case as an augmentation plan, we necessarily reject its argument that,

as with a proposed augmentation plan, if one source of substitute supply fails, the entire application must fail.

municipal applicants" from the speculation requirements or the various applicable requirements of appropriation. *City of Thornton*, 926 P.2d at 38. Because exchanges involve a delivery of substitute supply water to the stream and continuity with an upstream diversion, a non-injurious diversion at the upstream point must take on the character of the water right used as a source of downstream substitute supply. *See Empire Lodge*, 39 P.3d at 1155. Therefore, a municipality's entitlement to a conditional decree for appropriative rights of exchange is subject to the water court's determination that the applicant intends to acquire and can and will acquire suitable sources of substitute supply. Using a source-by-source approach for proposed sources of substitute supplies, a water court may set specific terms and conditions for each source and is better situated to prevent injury to users of vested water rights.

■ · Further, as noted above, exchanges involve four critical elements: (1) a source of substitute supply above the calling water right; (2) a substitute supply equivalent in amount and of suitable quality to the downstream senior appropriator; (3) available natural flow in the exchange reach; and (4) the ability to be implemented without injury. *Id.* While a general project-wide analysis might enable a water court to assess the third element, the first, second, and fourth elements cannot be properly assessed without a consideration of each substitute source of supply. Elements one and two particularly require specific knowledge of the source of substitute supply. Therefore, only by reviewing each proposed source of substitute supply not owned or controlled by the applicant individually can a court properly address whether the appropriative rights of exchange satisfy these elements.

■ In this case, we agree with the water court that various factors should be considered when analyzing each individual, conditional source of substitute supply. Specifically, when addressing whether a first step and intent to acquire additional sources has been demonstrated, an applicant must show that each source advances the government entity's claim to a non-speculative use of the conditional sources of substitute supply. Furthermore, when considering wheth-

er a conditional source of substitute supply satisfies the can and will test, a court may consider factors including, but not limited to: whether the government entity has commissioned any reports regarding the economic or engineering feasibility of obtaining the rights; whether the government entity is currently or had previously been involved in negotiations for purchase shares of the substitute supplies; whether the government entity currently owns any rights of first refusal of additional shares of the substitute supply; and the length of the diligence period within which an applicant must acquire the conditional sources of substitute supply. *See Dallas Creek Water Co.*, 933 P.2d at 37 (listing factors a court considers under the "can and will" requirement in diligence proceedings).

■ Using these factors, we affirm the water court's decree of Broomfield's conditional appropriative rights of exchange based on the nine sources that it currently owns or controls and the two sources it does not own or control but has demonstrated an intent, willingness, and ability to acquire. The water court found, and we agree, that Broomfield demonstrated that it has taken a first step and can and will obtain additional effluent from Aurora or the Consolidated Mutual Ditch Company, and that its acquisition of the effluent is non-speculative.

At trial, Broomfield presented evidence that the municipality is increasing in size at a rapid rate and is expected to increase at such rate for the foreseeable future. Broomfield's plan to utilize the conditional effluent source of substitute supply will allow it to operate larger exchanges on both reaches. Broomfield demonstrated that it will use the diverted water for all municipal purposes including irrigation, lake level maintenance, domestic, industrial, commercial, fire protection, stockwatering, recreations, piscatorial, storage, and all other municipal purposes.

The water court found, and we agree, that Broomfield has demonstrated that it can and will complete the tasks necessary to complete the exchange appropriations of effluent. Evidence at trial demonstrated that the municipality has the ability to construct an extension of the reuse system and augmentation stations. David Allen, Broomfield's Deputy Director of Public Works, testified that the municipality was currently engaged in nego-

tiations to purchase Aurora effluent. In addition, Broomfield currently has a contractual right for up to 500 acre-feet of Consolidated Mutual effluent, and it also has a right of first refusal for an additional 500 acre-feet. Because Broomfield has engaged in negotiations to obtain the additional 500 acre-feet and owns a right of first refusal for 500 acre-feet, it is highly probable that Broomfield will obtain the rights. Furthermore, we note that Broomfield proposes a twelve-year maximum diligence period in which it must acquire interests in these rights, or the rights are removed as conditional sources of substitute supply from its decree. The water court found, and we agree, that this limitation presents a reasonably diligent period of time within which the project can and will be completed.

We also agree with the water court that Broomfield demonstrated that it had taken a first step and can and will obtain additional shares in the Lupton Bottom Ditch Company. Allen testified that the municipality had initiated negotiations to purchase additional shares in the Lupton Bottom Ditch Company for use in the exchange through the Heit Pit. To accommodate the additional Lupton Bottom Ditch shares, Broomfield presented evidence of its intention to complete an expansion of the Heit Pit and its inlet and outlet works. Broomfield also proposed a twelve-year maximum diligence period for acquisition of the additional Lupton Bottom Ditch Company shares, ensuring a diligent and timely completion of the project.

Finally, the water court found, and we agree, that Broomfield did not prove that it had taken a first step toward obtaining or that it can and will obtain the six remaining water rights or the Arvada effluent. Daniel Mayo, Broomfield's Water Resource Administrator, testified that Broomfield has identified and is budgeting for these six sources of proposed substitute supply. However, the mere capability to purchase does not satisfy an actual first step toward purchasing any of the individual supplies. Mayo also testified that he was aware of 200 or 300 acre-feet of effluent available from the City of Arvada but made no specific testimony as to taking a step to acquire beyond speculated availability. As to the Lupton Meadow Ditch Company, Brighton Ditch Company, and Meadow Island No. 1 and No. 2 Ditches, Mayo testified that he had met with the ditch companies to discuss possibly utilizing waters, but did not offer any more proof other than vague discussions. Furthermore, Allen testified that Broomfield was at one time in negotiations with the Western Mutual Ditch Company but that those negotiations concluded without the purchase of any shares. In sum, we find that the water court properly determined that Broomfield's claim to the remaining six sources of substitute supply was speculative and could not support its application.

## IV.

Accordingly, we affirm the water court's decree of Broomfield's conditional appropriative rights of exchange based on the nine sources of substitute supply that it currently owns or controls and the two sources it does not own or control but has demonstrated an intent, willingness, and ability to acquire.